## State of Vermont v. Jeffrey Barber

[596 A.2d 337]

No. 88-246

Present: **Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.**

Opinion Filed November 30, 1990

Motion for Reargument Denied August 1, 1991

*William Sorrell,* Chittenden County State's Attorney, Burlington, and *Gary S. Kessler,* Resource Attorney, and *Allison Hastings,* Student Intern, State's Attorneys and Sheriffs Department, Montpelier, for Plaintiff-Appellee.

*Walter M. Morris, Jr.,* Defender General, and *Henry Hinton* and *William A. Nelson,* Appellate Defenders, Montpelier, for Defendant-Appellant.

**Dooley, J.** Defendant, Jeffrey Barber, appeals his conviction by the district court of driving with license suspended in violation of 23 V.S.A. § 674 and of leaving the scene of an accident in violation of 23 V.S.A. § 1128. We remand for further proceedings.

On December 3, 1987, the Burlington police received a call from a Burlington parking meter checker reporting a motor vehicle accident she observed at the corner of College and Church Streets in Burlington. A Burlington police officer responded and learned that two Shelburne police officers were following one of the vehicles. The two Shelburne police officers also witnessed the accident, and when the vehicle driven by defendant left the scene of the accident without stopping, gave chase in their unmarked vehicle with the blue lights activated. During the chase, defendant ran at least two stop lights before finally stopping at the corner of Park and Battery Streets. The Shelburne police went to defendant's vehicle and ordered him out of it. The Burlington police officer arrived on the scene soon after the defendant emerged from the vehicle, and, after conferring with the Shelburne police officers, arrested him. Defendant was charged with driving with a suspended license and leaving the scene of an accident.

Defendant moved to dismiss the prosecutions on the ground that he was stopped and arrested by officers who were outside of their territorial jurisdiction. The trial court denied the motion because the formal arrest was made by the Burlington police officer. Defendant waived his right to a jury trial, and the court subsequently found him guilty of both offenses.

Defendant appeals, claiming that the trial court erred by refusing to dismiss these prosecutions because the State's evidence was the fruit of an unlawful motor vehicle stop made by municipal police officers who were outside their jurisdiction. Defendant is correct that the Shelburne police officers were acting beyond their statutory authority when they stopped him in Burlington. We have held that local police officers may not detain and arrest a suspect without a warrant outside of their

territorial jurisdictions unless special circumstances are present.* *State v. LeBlanc,* 149 Vt. 141, 142, 540 A.2d 1037, 1038 (1987); *State v. Hart,* 149 Vt. 104, 106, 539 A.2d 551, 552 (1987). The State attempts to distinguish *LeBlanc* and *Hart* on the basis that in those cases the officer who was outside his jurisdiction made both the stop and arrest, whereas here, the Shelburne police merely stopped the defendant while the Burlington police effectuated the actual arrest. We cannot square this rationale with *Hart.*

In *Hart,* a Bethel town constable observed a car in Royalton traveling very slowly and failing to stop at a stop sign. The constable stopped the vehicle and noticed that the operator smelled of alcohol. The operator failed to walk a straight line on request, and the constable radioed the Vermont State Police for assistance. A state trooper arrived on the scene and, after conducting several tests, cited the operator for DUI. We held that any evidence stemming from the stop must be suppressed because the Bethel constable was acting beyond his authority when he stopped and detained the operator of the vehicle, even though the state trooper issued the actual citation. 149 Vt. at 105–07, 539 A.2d at 552–53. The facts of *Hart* are nearly identical to those in the present case. Here, the Shelburne police officers were acting outside their territorial jurisdiction when they stopped and detained the defendant. Under *Hart,* it makes little difference who makes the formal arrest after the detention; the damage has already been done.

█ There are two notable exceptions to this general rule which permit peace officers to make a valid warrantless arrest outside their territorial jurisdiction. The first exception is when the police officer is in "fresh pursuit" of a suspect and crosses a municipal boundary from the jurisdiction in which the officer is authorized to act into a jurisdiction where the stop and arrest is made. See *State v. Griffin,* 152 Vt. 309, 311, 565 A.2d 1340, 1341 (1989). This exception does not apply in this case.

The second exception to the general rule is where the detention and/or arrest of a suspect by a police officer acting outside

---

*Effective January 26, 1988, 24 V.S.A. § 1935 was amended to provide that "[t]he powers granted to police officers under this section may be exercised statewide." Since the events in question took place before this amendment became effective, the amendment has no effect on this case.

the territorial jurisdiction may be justified as a citizen's arrest. See *Hart*, 149 Vt. at 108–09, 539 A.2d at 554. Private citizens are empowered to arrest fellow citizens for misdemeanors committed in their presence if the misdemeanor constituted a breach of the peace. *Id.*; see also Restatement (Second) of Torts § 119 (1965). Likewise, the detention of a person by a police officer acting outside his jurisdiction is permissible as long as the officer does not use the color of the office to gain access to evidence not otherwise available to the private citizen. *State v. Tamburri*, 463 So. 2d 489, 491 (Fla. Dist. Ct. App. 1985).

Our cases provide some guidance on what facts will give rise to a breach of the peace. In *Hart*, we held that driving very slowly and failing to stop at a stop sign is not a breach of the peace. Similarly, in *LeBlanc*, we held that operating a motorcycle without a rear registration plate and in such a way as to weave across the double centerline of the road did not constitute a breach of the peace. In *State v. Sanderson*, 123 Vt. 214, 216, 185 A.2d 730, 731 (1962), however, we held that the public peace may be transgressed by the reckless, offensive operation of a motor vehicle in such a manner as to endanger the safety and security of persons lawfully on or near the highway. In *Sanderson*, defendant departed from a driveway at a high rate of speed, screeching the tires. In addition, the vehicle was not equipped with a muffler. We held that these facts justified the conclusion that there was an offense against the public safety, peace, and good order.

In this case, the two Shelburne police officers witnessed defendant's vehicle hit a stationary vehicle and pull off its bumper on a busy city street with numerous other persons around. Defendant slowed down for a moment and then speeded up to avoid being apprehended. During the ensuing chase, defendant weaved in and out of traffic and ran at least two stop lights. Unlike the circumstances in *LeBlanc* and *Hart*, the court could find that defendant's actions rose to *Sanderson*'s level of reckless and offensive operation of a motor vehicle which clearly endangered the safety and security of others. If there was a breach of the peace, the Shelburne police officers were justified in pursuing and stopping defendant and detaining him until the Burlington police arrived on the scene to take charge. With the exception of flashing its blue lights in an unmarked

car, the Shelburne police did nothing that a private citizen could not have done in similar circumstances. We do not believe that flashing blue lights turned a valid citizen's action into an abuse of police authority.

■    Although the court could find a breach of the peace on the evidence presented here, it never reached the issue. Furthermore, we are not persuaded that the evidence is so overwhelming as to show a breach of the peace as a matter of law. Compare *State v. Griffin*, 152 Vt. at 311, 565 A.2d at 1341 (evidence of fresh pursuit undisputed and clear so that Supreme Court could rely on this ground to validate arrest even though not found by trial court). We do not, however, automatically reverse the conviction. Rather, we remand for a new hearing to consider the breach of the peace issue. See, e.g., *State v. Walls*, 170 W. Va. 419, 423, 294 S.E.2d 272, 276 (1982) (where trial court failed to hold preliminary suppression hearing to determine admissibility of evidence, the proper procedure is to remand case to conduct such a hearing; depending on trial court's findings at the hearing, conviction is either affirmed or reversed).

We note, however, that unlike *LeBlanc* and *Hart*, the evidence against defendant does not rest solely on the stop and arrest which is challenged by the defendant. Numerous individuals, including the Shelburne police and a Burlington meter checker, witnessed the accident and defendant leaving the scene. Some witnesses provided a description of the vehicle and of the driver. There was testimony that the Burlington meter checker recorded the license plate number of defendant's vehicle at the scene of the accident. Hence, even if the stop is eventually found unlawful, the State may have sufficient independent evidence to obtain a conviction. Therefore, if the stop and arrest is found unlawful, the conviction should be vacated and defendant retried without the suppressed evidence. If, on the other hand, the stop and arrest was lawful, the conviction remains.

*Remanded for proceedings consistent with this opinion.*