2014 VT 91

## State of Vermont v. Allen Spaulding

[103 A.3d 487]

No. 13-208

Present: **Reiber, C.J., Dooley, Robinson and Crawford, JJ., and Tomasi, Supr. J., Specially Assigned**

Opinion Filed August 8, 2014

*Ashley A. Harriman*, Windham County Deputy State's Attorney, Brattleboro, for Plaintiff-Appellee.

*Matthew F. Valerio*, Defender General, and *Kerry DeWolfe*, Appellate Defender, Montpelier, for Defendant-Appellant.

¶ 1. **Crawford, J.** Defendant Allen Spaulding appeals from his conviction on domestic assault charges following a jury trial. The issues on appeal are the admission of the complainant's written statement as past recollection recorded and claims of insufficiency of the evidence and improper closing argument. We reverse on the hearsay issue.

¶ 2. The following facts are drawn from testimony of witnesses and exhibits introduced at trial. On July 30, 2012, defendant and the complainant spent the day at a lake. They had been in a live-in romantic relationship for the previous year and a half, although the complainant had recently ordered defendant out of her home and obtained a no-trespass order against him.

¶ 3. Over the course of the day, the complainant drank heavily. She described herself as "trashed" when the couple returned to her home in the evening. The complainant called 911 at 11:45 p.m. seeking assistance. A portion of the 911 recording was admitted into evidence and played for the jury. In the recording, the complainant told the operator that she was calling about a domestic incident. She stated that she had woken up on the floor. She believed her jaw was broken. She said that defendant had

been in her house despite the no-trespass order and that he "had me around the neck." She said she was bleeding and had lost consciousness.

¶ 4. The first police officer to arrive found the complainant bleeding from a cut lip. While the officer was present, defendant called the complainant on her cell phone. When the officer learned that defendant was nearby, he left the complainant's home to arrest him. On the officer's return to the apartment, he and the complainant finished drafting a written statement, which she signed under oath.

¶ 5. The statement says that defendant came to complainant's home at 7:30 p.m. looking for "money, cigarettes, food etc." It states that after an argument defendant grabbed the complainant by the throat, dragged her, punched her in the mouth, and threatened to kill her before taking her money and cigarettes. She complained of severe pain in her jaw, lower back, head, and mouth.

¶ 6. Exactly who wrote the statement remains disputed. At trial, the complainant testified that she had no recollection of writing the statement and did not believe that it looked like her hand-writing. She testified that she was extremely intoxicated and recalled nothing of the evening except being taken to the hospital by ambulance. She agreed that the signature was hers. She testified that she would not sign a statement if she did not believe it to be true, and would not lie to a police officer. The officer testified that he helped the complainant as she wrote the state-ment. The statement is signed under oath and notarized by the officer.

¶ 7. Defendant was charged with aggravated domestic assault, domestic assault, and unlawful trespass. The Windham Criminal Division conducted a one-day jury trial on January 15, 2013. Over defendant's objection, the court admitted the complainant's written statement into evidence as "past recollection recorded" under Vermont Rule of Evidence 803(5). In conformance with the requirements of Rule 803(5), the statement was read aloud to the jury but not sent into the jury room at the time of deliberations. At the close of the State's case, defendant moved for judgment of acquittal on all three counts. The court denied the motion. Defendant was convicted on the domestic assault charges. The jury found him not guilty on the trespass charge. This appeal followed.

¶ 8. On appeal, defendant argues that the evidence is insufficient to support the verdict, that the trial court erred in admitting the complainant's written statement, and that the prosecutor's statements during closing arguments asking the jurors to put themselves in the victim's shoes amount to plain error. We begin with the sufficiency-of-the-evidence claim. In reviewing the court's denial of defendant's motion for acquittal, we apply "an exacting standard." *State v. Myers*, 2011 VT 43, ¶ 41, 190 Vt. 29, 26 A.3d 9. We view the evidence in the light most favorable to the State, "excluding any modifying evidence, and determine whether that evidence sufficiently and fairly supports a finding of guilty beyond a reasonable doubt." *State v. Brochu*, 2008 VT 21, ¶ 21, 183 Vt. 269, 949 A.2d 1035 (quotation omitted). "[A] judgment of acquittal is proper only if the prosecution has failed to put forth any evidence to substantiate a jury verdict." *State v. Couture*, 169 Vt. 222, 226, 734 A.2d 524, 527 (1999).

¶ 9. Defendant was charged with two counts of first-degree aggravated domestic assault. 13 V.S.A. § 1043. The aggravating circumstance for one charge was defendant's prior conviction of aggravated domestic assault. *Id.* § 1043(a)(3). The second charge included an allegation of "serious bodily injury to a family or household member" in violation of 13 V.S.A. § 1043(a)(1). As to the latter charge, defendant argues that the evidence does not establish the element that defendant attempted to cause serious bodily injury because the sole evidence to establish this was the complainant's statement to the 911 operator that defendant had her "by the neck" and her prior recorded statement that she was "grabbed by the throat." Defendant claims that because both these statements were admitted under hearsay exceptions the quality of the evidence is too thin to support a conviction. In support of this argument, defendant relies on *State v. Robar*, 157 Vt. 387, 395, 601 A.2d 1376, 1380 (1991), in which this Court held that the State could not meet its burden of proof solely based on a past recollection recorded or a prior inconsistent statement, "unless the prior statement meets specific standards of reliability."

¶ 10. ■ The past recollection recorded admitted at trial supports the charge of aggravated assault. The written statement recounts that defendant came into the complainant's apartment, grabbed her throat, punched her in the mouth, threatened to kill her, and caused severe pain to her lower back, head and mouth. It is not necessary, however, to make a determination of whether

the statement meets the reliability standard set forth in *Robar* because, in this case, the conviction is supported by additional evidence beyond the past recollection recorded. The other evidence demonstrating that defendant attempted to cause or willfully caused serious bodily injury to the complainant included the 911 call, the responding officer's testimony, and the physical evidence. During the 911 telephone call, the complainant stated that defendant had been in her house, defendant had her around the neck, she was bleeding and she lost consciousness.[1] The responding officer testified that the complainant was "sobbing [and] visibly upset" when he responded to the 911 call, the complainant was bleeding from a cut on her lip, blood was spattered on her shirt, and there were reddish marks on her throat. The State also introduced photographs depicting the injuries to the complainant's lip and throat. Taken together, this evidence was sufficient to show that defendant attempted to cause or willfully caused serious bodily injury to the complainant. Therefore, the court properly denied defendant's motion, and defendant is not entitled to acquittal.

¶ 11. Next, we address defendant's argument that the complainant's prior recorded statement was improperly admitted. In 1844, this Court adopted the English common-law rule permitting testimony from a witness based on his past written statements despite the absence of any current memory of the events.

> There are many facts which no memory could possibly carry along, without the aid of memoranda; and when they are committed to writing the detail of the facts is dismissed from the memory, and they are the sooner forgotten, for the very reason that the writing is relied upon. All that is necessary in such a case is that the witness should have a general recollection of the trans-

---

[1] The *Robar* holding that the State cannot meet its burden of proof based solely on a hearsay statement unless there are indicia of reliability is limited to those hearsay statements admitted as prior inconsistent statements or as past recollections recorded, and does not extend to evidence admitted under other hearsay exceptions. 157 Vt. at 395, 601 A.2d at 1380. Although in *State v. West*, 164 Vt. 192, 667 A.2d 540 (1995), the defendant claimed that an excited utterance had to have separate indicia of reliability, this Court distinguished the excited utterance from the past recollection recorded in *Robar* and did not extend the *Robar* rule to excited utterances. *Id.* at 196-98, 667 A.2d at 543-44.

action, and also that the memorandum was correctly made at the time it was made.

*Mattocks v. Lyman*, 16 Vt. 113, 117-18 (1844). At the federal level, this common-law rule was codified among the hearsay exceptions as Federal Rule of Evidence 803(5). Vermont subsequently adopted the federal rule in the Vermont Rules of Evidence without alteration.[2] *State v. Paquette*, 146 Vt. 1, 3, 497 A.2d 358, 360 (1985).

¶ 12. ■ Rule 803(5)'s exception for past recollection recorded is distinct from the use of a writing to refresh recollection. See V.R.E. 612 (allowing witness to use writing or object to refresh his memory at trial). In the latter case, the evidence is the witness's testimony based on a memory which has improved through resort to some record or prior report. Past recollection recorded, however, is substantive evidence of the events described. If the statement meets foundational requirements, it is admissible as a substitute for testimony based on the witness's memory. See *State v. Lander*, 155 Vt. 645, 645, 582 A.2d 128, 128-29 (1990) (mem.) (explaining difference between use of prior written statement to refresh recollection and as past recollection recorded).

¶ 13. ■ Rule 803(5) establishes three foundational requirements for admissibility: (1) that the declarant once had knowledge of the events described in the statement; (2) that he or she no longer has sufficient recollection to testify fully or accurately about the events; and (3) that the statement is "shown to have been made by the declarant or, if made by one other than the declarant, to have been examined by the declarant and shown to accurately reflect the declarant's knowledge when the matters were fresh in

---

[2] Vermont Rule of Evidence 803(5) provides:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> . . . .
>
> (5) A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in his memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

his memory." *Paquette*, 146 Vt. at 3, 497 A.2d at 360 (quotations omitted).

¶ 14. There is no dispute in this case concerning the first two elements. The complainant was present during the events which gave rise to the criminal charges and therefore once had knowledge of them. She testified at trial that she had very limited recollection of the evening of the altercation due to excessive drinking. The parties disagree over whether there was sufficient evidence to meet the third requirement.

¶ 15. Defendant argues that the statement was created by the investigating police officer and neither made nor adopted by the complainant. He also argues that the statement should have been excluded because the complainant did not testify at trial that it correctly reflected her knowledge of the events.

¶ 16. The evidence at trial concerning the statement came from two sources: the complainant and the investigating police officer. The complainant testified that she was extremely intoxicated after drinking all day at the lake and had no memory of writing the statement. She testified that she had seen the statement and "I can tell you that it doesn't even really look like my writing." She was able to identify her signature at the bottom of the statement, responding "[i]t looks like my signature."

¶ 17. The investigating officer testified concerning the statement and his own observations at the scene. He stated that when he arrived, he observed that the complainant had a cut lip and red marks around her neck, and that there were drops of what appeared to be blood on the sofa. He described the complainant as emotionally upset but not too intoxicated to complete a sworn statement. He stated that he assisted the complainant in writing the statement by telling her the type of information to include. He reviewed it with her and had her swear to it. He then notarized the statement. He found the written statement to be consistent with earlier verbal statements made to him by the complainant.

¶ 18. ■ This evidence was sufficient to establish the foundational requirement that the statement was made or adopted by the witness. The dispute between the parties on appeal is whether the complainant wrote it or whether the handwriting is the officer's. The dispute is immaterial since the complainant testified that the signature was likely to be hers. The evidence that she swore to the contents before the officer was uncontradicted.

Whether she wrote the statement herself with assistance from the officer, as the State contends, or swore to the truth of a statement which he had prepared for her, as defendant argues, Rule 803(5) applies equally. See V.R.E. 803(5) (stating that statement must have been "made or adopted by the witness"). In either event, the trial court acted within the scope of its discretion in determining that the statement was the complainant's.

¶ 19.  ■  The final element of Rule 803(5) also requires evidence that the statement accurately reflects the witness's knowledge at the time she made it. *Paquette*, 146 Vt. at 3, 497 A.2d at 360. It is frequently established by asking the witness directly whether her statement was accurate when written. A witness with no memory of providing the statement may be unable to provide this assurance of reliability. A recanting or uncooperative witness may be unwilling to do so.

¶ 20.  ■  Decisions in Vermont and elsewhere have divided on the question of whether the witness must vouch for the reliability of her statement or whether circumstantial evidence is an acceptable substitute. We first addressed the issue in *State v. Lander*. In a brief memorandum decision, this Court held that a prior written statement lacked sufficient foundation to be admitted into evidence where "[a] review of the record indicates that the witness did not adopt his prior statement as his own or aver that the statement accurately reflected his knowledge at the time of its making." 155 Vt. at 645, 582 A.2d at 128. *Lander* indicates that the declarant must testify to the accuracy of his own statement for it to be admissible under Rule 803(5).

¶ 21. The Court returned to the issue in *State v. Marcy*, 165 Vt. 89, 680 A.2d 76 (1996), which, like the present case, was a domestic violence prosecution. As in this case, the complaining witness in *Marcy* appeared reluctant to cooperate with the prosecution and testified that she did not remember the assault or calling the police for help. The prosecution offered a tape-recorded interview that the witness had provided to the police shortly after the incident. In the absence of testimony from the complaining witness that the statement accurately reflected her knowledge of the assault, the prosecution offered corroborating testimony from the police officer and a domestic violence victim advocate who had spoken with the complaining witness. These witnesses testified that the tape recording was consistent with information about the

assault derived from other sources. As in this case, the complaining witness testified that in general she would not give a false statement to police.

¶ 22. The Court divided three ways. A two-justice plurality affirmed the admission of the statement on the ground that Rule 803(5) does not require testimony from the declarant that the statement accurately reflected her recollection of the events. *Id.* at 95-96, 680 A.2d at 79-80. This opinion permitted the trial judge to consider the totality of the circumstances, including consistency between the statement and other evidence, to determine its reliability. *Id.* Two justices filed a concurring decision in which they wrote that the witness's statement that she would not lie to a police officer was sufficient evidence of reliability. *Id.* at 100, 680 A.2d at 82-83 (Allen, C.J., concurring). Since this testimony came from the witness herself, they saw no conflict with the *Lander* requirement that the witness establish the requisite foundation through her own testimony. *Id.* Justice Dooley dissented on the ground that under *Lander* the statement could not be admitted in the absence of testimony from the declarant herself that the statement accurately reflected her understanding at the time of the events. *Id.* at 106, 680 A.2d at 86 (Dooley, J., dissenting).

¶ 23. The *Marcy* plurality relied on *United States v. Porter*, 986 F.2d 1014 (6th Cir. 1993), in which the declarant was present at trial but unable or unwilling to testify to the accuracy of her prior statement. The Sixth Circuit affirmed the district court's admission of a prior written statement by the recalcitrant witness, who was described by the trial judge as "disingenuous" and "evasive," on the basis of circumstantial factors indicating trustworthiness. *Id.* at 1017. These factors included the signing of the statement under penalty of perjury and the inclusion of "considerable detail which was internally consistent, as well as consistent with other uncontradicted evidence which had already been admitted." *Id.* The trial judge also considered the fact that the witness had given the statement at a time when she was fearful of reprisal by the defendant. *Id.* The Sixth Circuit reasoned that:

> Rule 803(5) does not specify any particular method of establishing the knowledge of the declarant nor the accuracy of the statement. It is not a *sine qua non* of admissibility that the witness actually vouch for the accuracy of the written memorandum. Admissibility is,

instead, to be determined on a case-by-case basis upon a consideration, as was done by the district court in this case, of factors indicating trustworthiness, or the lack thereof.

*Id.* *Porter* is the leading case for the position that the witness need not testify to the accuracy of his or her prior statement in order for it to be admissible under Rule 803(5) if reliability can be established through other foundational evidence.

¶ 24. The most recent case adopting the alternative position, which requires that the witness vouch at trial for the accuracy of his or her prior statement, is *Polite v. State*, 116 So. 3d 270 (Fla. 2013) (per curiam). In *Polite*, a woman who had previously provided a sworn written statement to police identifying one of three armed men who had broken into her home had great difficulty recalling the events or the statement at trial. The trial court admitted the statement. On appeal, the Florida Supreme Court reversed on the ground that, because the prior statement functions as a substitute for the witness's memory, it can be admitted only on the basis of testimony from the witness herself that the statement accurately reflected her recollection at the time. *Id.* at 279. The court held that " 'the reliability of the assertions rests upon the veracity of a witness who is present and testifying.' " *Id.* (quoting 2 K. Brown, McCormick on Evidence § 279, at 294 (6th ed. 2006)). The *Polite* decision rejected the rule articulated in *Porter* and adopted by the plurality in *Marcy* that proof of reliability can be found within the totality of the circumstances of the case even when the witness herself is unable to vouch for the reliability of her prior statement. *Id.* at 278.

¶ 25. ▊ We are persuaded by Justice Dooley's dissent in *Marcy* and by the *Polite* decision. We return today to the rule expressed in *Lander* that a specific avowal of the reliability of the recorded recollection from the declarant herself is necessary for admissibility. We reject the plurality opinion in *Marcy* that the necessary foundation can be established by finding the prior statement to be consistent with other evidence or upon testimony that the witness generally tells the truth. See *CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 81 (1987) ("As the plurality opinion . . . did not represent the views of a majority of the Court, we are not bound by its reasoning." (footnote omitted)).

¶ 26. We start our analysis by considering the shortcomings of the "totality-of-the-circumstances" rule in this particular case.

Only three circumstances supported the State's position that the statement was a reliable reflection of the complainant's memory. The first was the complainant's testimony at trial that she would neither "sign something that [she] had written that [she] didn't believe was true," nor would she lie to the police. The second was that she signed the statement under oath. The third was that she was injured in a manner consistent with her report to the 911 operator that defendant "had [her] around the neck."

¶ 27. The meager quality of these indicia of reliability illustrates the difficulty with the totality-of-the-circumstances rule. There may be witnesses who will brazenly testify in court that they are in the habit of lying, especially to the police, but they are surely small in number. People are more likely to describe themselves as mainly honest. In court as elsewhere in life, we discount such general claims of truthfulness and honesty. See V.R.E. 608(a) (stating that evidence of truthful character is admissible only after it has been attacked); C. Kilpatrick, *Nixon Tells Editors, "I'm Not a Crook,"* Wash. Post, Nov. 18, 1973, at A01.

¶ 28. Courts have divided on whether testimony from the witness about his or her habitual inclination towards truth-telling is sufficient to establish the reliability of a specific statement. Compare *Walker v. Larson,* 169 N.W.2d 737, 742 (Minn. 1969) (stating that "general moral attitude" is typically sufficient to establish reliability), with *Hodas v. Davis,* 196 N.Y.S. 801, 802-03 (App. Div. 1922) (holding testimony that witness had never before signed a false statement to be insufficient). The skeptical view of such statements is best captured by Mueller and Kirkpatrick in their discussion of Rule 803(5):

> If the witness cannot recall making the statement despite the fact that the occasion was unique or nonroutine in her life, because of the passage of time or for indeterminable reasons rooted in the transience of memory, or perhaps in psychology or interest, the question arises whether it is enough if she testifies simply that she would not have signed or prepared it if it were not true. Probably even this tepid endorsement is enough if nothing better may be had, since it provides testimonial support. It is only a claim of general honesty, however, that sheds faint circumstantial light and is the kind of thing nearly anyone would say almost any time.

> Accepting such an endorsement reduces the accuracy requirement, and judges should have leeway to exclude statements offered on this basis almost as a matter of instinct if they doubt the substance of the endorsement, and some decisions require exclusion in this situation.

4 C. Mueller & L. Kirkpatrick, Federal Evidence § 8.76 (4th ed. 2014) (footnotes omitted).

¶ 29. ▉ In the face of such faint praise, we cannot accept a claim of general honesty as the basis for admission of the prior statement. We interpret our version of Rule 803(5) to require specific evidence of reliability from the declarant. This could include testimony that the declarant is confident that she was telling the truth on that particular occasion. See, e.g., *United States v. Patterson*, 678 F.2d 774, 779-80 (9th Cir. 1982) (holding grand jury transcript admissible where declarant testified that he did not believe he had lied to grand jury and that he had recalled the events better when he testified to grand jury). Indeed, that would be the most conventional foundation for admissibility. A decision to admit a recorded recollection, however, cannot depend upon a general statement that the declarant is not in the habit of lying.

¶ 30. For these reasons we also reject the position of the two concurring justices in *Marcy* who concluded that the testimony from the complaining witness that she usually told the truth was sufficient to establish the reliability of the statement. Such a description of a habit or practice of honesty — particularly as the witness perceives it in herself — is an insufficient basis for admission.

¶ 31. Similarly, without minimizing the solemn importance of oath-taking, the notarization of a statement by an intoxicated person in the middle of the night provides scant assurance of its truth. See 2 Brown, *supra*, § 283, at 299 ("An assertion of [a statement's] accuracy in the acknowledgment line of a written statement or such an acknowledgment made previously under oath is not sufficient.").

¶ 32. With respect to the third factor — the internal consistency of the State's evidence or totality of the circumstances — we are faced with the problem of confirmation bias. Having formed an idea, people, including judges, are notoriously prone to pick and

choose among the evidence which supports their initial view.[3] This tendency is particularly marked in the application of multi-factorial "balancing tests." For this reason, the U.S. Supreme Court was critical of the use of the "reasonably reliable" test for the admission of hearsay in the context of the Confrontation Clause:

> By replacing categorical constitutional guarantees with open-ended balancing tests, we do violence to [the constitutional] design. Vague standards are manipulable, and, while that might be a small concern in run-of-the-mill assault prosecutions like this one, the Framers had an eye toward politically charged cases like [Sir Walter] Raleigh's — great state trials where the impartiality of even those at the highest levels of the judiciary might not be so clear.

*Crawford v. Washington*, 541 U.S. 36, 67-68 (2004).

¶ 33. An evidentiary test phrased as "the totality of the circumstances" positively invites selective consideration of the facts needed to support admissibility. This case is a good example. Photographs of the injuries demonstrate that the complainant suffered a cut lip, but they tell us little about how it happened. They are consistent with injury inflicted by defendant as well as with other explanations. Similarly, defendant's presence in the apartment is consistent with an assault, but it does not prove it. The judge's search for circumstantial evidence of reliability can become little more than a search for confirmation of an unexpressed decision to admit the statement. We will find ourselves looking through the wrong end of the telescope — reducing our field of view and focusing only on the assumed conclusion of guilt — if the bare fact of injury lays a foundation for the admission of an out-of-court statement.

¶ 34. ■ We also find support for the *Lander* position in the structure of the evidence rules themselves. There are three

---

[3] See, e.g., Francis Bacon, *Advancement of Learning and Novum Organum* 320-21 (J.E. Creighton ed., Colonial Press 1900) (1620) ("The human understanding, when any proposition has been once laid down . . . forces everything else to add fresh support and confirmation; and although most cogent and abundant instances may exist to the contrary, yet either does not observe or despises them, or gets rid of and rejects them by some distinction, with violent and injurious prejudice, rather than sacrifice the authority of its first conclusion.").

principal exceptions to the general prohibition against hearsay for prior statements that are admissible without regard to the state of mind of the declarant.[4] In addition to the past recollection exception, prior statements by the witness and former testimony are admitted on the proper foundation. See V.R.E. 801(d)(1), 804(b)(1). The two latter exceptions are limited by conditions which afford an opportunity for cross-examination. See, e.g., V.R.E. 801(d)(1) (permitting prior statement by declarant to be admitted if "declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement"). Similarly, the rule allowing the use of prior inconsistent statements for impeachment contains strict limits against the admission of the statement itself. See V.R.E. 613(b) (stating that extrinsic evidence of prior inconsistent statement is generally not admissible).

¶ 35. ■■■ In contrast, the admissibility of past recollection recorded is remarkable in its potential breadth. Any statement in any form is subject to the exception. The only real limits are the absence of a current memory and a positive statement from the declarant that the events were fresh in her mind and reliably recounted in her prior statement. The opportunity to test this testimony through cross-examination may be limited, but it is present when the declarant provides the foundational testimony for her statement. If testimony from the declarant is replaced by resort to other evidence in the case consistent with guilt or to general platitudes that she is in the habit of telling the truth, the past statement may come in without being challenged in any meaningful way. As Justice Dooley pointed out in his dissent in *Marcy*, this approach would effectively transform Rule 803(5) into a "catch-all exception" for hearsay. *Marcy*, 165 Vt. at 106, 680 A.2d at 86.

¶ 36. We recognize that the rule as we now define it presents obstacles to cases in which victims are prone to recant or are fearful of retaliation. These are very real problems in the criminal justice system. They are not solved, however, by expanding the exception for past recollection recorded to allow the admission of

---

[4] The majority of hearsay exceptions or nonhearsay statements such as admissions, excited utterances, or present sense impression are deemed to be reliable due to the internal mental experience of the declarant. V.R.E. 801(d)(2), 803(1), (2). Others come in as matters of business or official routine. See, e.g., *id.* 803(6) (allowing admission of business records).

virtually any statement by a person who testifies that she is normally truthful and has no current memory of the events described.

¶ 37. ■ As the proponent of the evidence at issue, the State had the burden of proving its admissibility. *State v. Goodnow*, 162 Vt. 527, 529, 649 A.2d 752, 754 (1994). The State failed to meet its burden in this case. The complainant's prior statement should have been excluded because the complainant failed to testify to its reliability at trial.

¶ 38. ■ We can affirm a conviction despite an erroneous evidentiary ruling if the error was harmless beyond a reasonable doubt. See *State v. Oscarson*, 2004 VT 4, ¶ 29, 176 Vt. 176, 845 A.2d 337. In this case, however, the error was not harmless. The other evidence against defendant was not strong, and the erroneously admitted statement was central to the State's case. See *State v. Johnson*, 2008 VT 135, ¶ 23, 185 Vt. 575, 967 A.2d 1174 (mem.) (reversing conviction where trial court erroneously admitted statements by defendant and error was not harmless). The only evidence that it was defendant who assaulted the complainant was her prior written statement and the 911 call. Since we rule today that the prior statement should have been excluded from evidence, we remand the case for a new trial. We do not address defendant's argument concerning the improper closing argument since the evidentiary issue alone requires reversal and that issue is unlikely to reoccur if the case is tried again.[5]

*Reversed and remanded for further proceedings consistent with this decision.*

---

[5] In the course of closing, the prosecutor stated the following:

> Finally, you have [complainant's] testimony. Think about, if you can, how you would feel if you were asked to come into a courtroom and talk about something like this in front of twelve strangers. Think about how you would feel if you were in that position. You were able to hear what she was able to remember today on the stand. Think about if something like this had occurred to you — had happened to you, if you were in this person's shoes, would you want to remember every detail? Is this the type of thing that you would go over in your mind, you would commit to memory? Or would you just want it to be in the past?

We note that the prosecutor's exhortation to the jury to place themselves in the shoes of the complainant was improper. It was not the subject of an objection by

¶ 39. **Tomasi, Supr. J.,** Specially Assigned, concurring. I agree with the majority that we should reject the totality-of-the-circumstances test set out in the plurality opinion in *State v. Marcy*, 165 Vt. 89, 680 A.2d 76 (1996). I do so, however, based on an alternate rationale and come to a different result concerning the admission of recorded recollections based on claims of "general honesty." Because I conclude that the trial court's use of the incorrect standard requires reversal, I concur in the Court's judgment reversing and remanding for a new trial.[6]

## I. Vermont Rule of Evidence 803(5)

¶ 40. My review of the Reporter's Notes to V.R.E. 803(5), Vermont's common law, and the views of commentator leads me to conclude that the drafters of Rule 803(5) did not intend to allow admission of prior recorded recollections based on an assessment of the totality of the circumstances. Decisions from elsewhere endorsing that test have done so without consideration of the specific history of the Vermont rule.

¶ 41. *United States v. Porter*, 986 F.2d 1014, 1017 (6th Cir. 1993), and its progeny have relied primarily on two textual bases for adopting the totality-of-the-circumstances standard. First, those cases note that Rule 803(5) itself does not specify any particular method for determining the accuracy of the prior statement. See, e.g., *State v. Nava*, 311 P.3d 83, 93 (Wash. Ct. App. 2013). In that regard, the federal and Vermont rules contain similar general provisions, requiring that the statement "accurately reflect[ ] the witness's knowledge," F.R.E. 803(5)(C), and that the statement be "shown . . . to reflect [the witness's] knowledge correctly," V.R.E. 803(5). Second, the cases point to the notes of the Federal Advisory Committee. See, e.g., *Nava*, 311 P.3d at 93-94. Those comments provide the following guidance on this issue: Rule 803(5) makes no attempt "to spell out the method of establishing the initial knowledge or the contemporaneity and accuracy of the record, leaving them to be dealt with as the circumstances of the particular case might indicate." F.R.E. 803 advisory committee's notes. Armed with the text of the rule and

---

defendant. We do not consider whether it met the criteria for reversal on plain-error grounds.

[6] I also join the majority's determinations with regard to defendant's sufficiency-of-the-evidence argument and the prosecution's repeated and inappropriate invocation of "golden rule" comments in its closing and rebuttal arguments.

that comment, a number of courts have felt comfortable adopting a test of accuracy that allows the trial court to examine all relevant evidence to determine the likely veracity of a recorded recollection.

¶ 42. While the language of Vermont Rule 803(5) is nearly the same as Federal Rule 803(5),[7] the advisory notes accompanying the two rules differ. See *State v. Oscarson*, 2004 VT 4, ¶ 19, 176 Vt. 176, 845 A.2d 337 (relying on Reporter's Notes to interpret hearsay exception); see also *Tome v. United States*, 513 U.S. 150, 160 (1995) (plurality opinion) (explaining that advisory committee's notes are "a useful guide in ascertaining the meaning of the Rules"). Importantly, the Reporter's Notes accompanying Vermont Rule 803(5) do not reference or cite to the Federal Advisory Committee's guidance concerning proving the accuracy of the recorded recollection. Instead, the Reporter's Notes explain that the rule is "consistent with Vermont law," and cite four principal Vermont cases to support that conclusion.

¶ 43. An examination of those decisions reveals that, historically, Vermont required some type of in-court confirmation from the author of a recorded recollection that the record was correct. In *Downer v. Rowell*, 24 Vt. 343 (1852), and *Mattocks v. Lyman*, 16 Vt. 113 (1844), the witnesses had sufficient general memory to testify affirmatively that the prior writing was correct when made. In *Davis v. Field*, 56 Vt. 426 (1884), the Court expanded the type of vouching that could establish the correctness of the recorded recollection:

> It is enough *prima facie* if he swears to his signature, and that it would not have been affixed but for the purpose of attestation.

> The old notion that the witness must be able to swear from memory is pretty much exploded. All that is required, is, that he be able to swear that the memorandum is correct.

*Id.* at 428 (citations omitted); see *Alvord v. Collin*, 37 Mass. (20 Pick.) 418, 430-31 (1838) (accepting evidence where witness was able to identify a prior certification signed by him and testify that,

---

[7] Federal Rule of Evidence 803(5) was amended in 2011 for stylistic purposes. See F.R.E. 803, cmt. 2011 amend. These stylistic amendments have not been incorporated in Vermont Rule 803(5).

based on the prior signing, the certification was accurate) (cited with approval in *Davis*).[8]

¶ 44. Any doubt as to whether Vermont intended Rule 803(5) to be a relaxation of the common-law standard is answered by *State v. Paquette*, 146 Vt. 1, 497 A.2d 358 (1985). There, the Court reviewed a case where the trial occurred prior to the adoption of Vermont Rule 803(5), but the appeal occurred after the rule had taken effect. The Court concluded that the change did not impact the analysis of the recorded-recollection issue. The Court determined that Rule 803(5) "is a codification of the common law rule" and that "the common law rule is co-extensive with the rule as codified in V.R.E. 803(5)." *Id.* at 3 n.2, 497 A.2d at 360 n.2.

¶ 45. Vermont's approach of requiring the proponent of a prior statement to vouch for its accuracy was consistent with the common law in general. As set out in Wigmore:

> The witness must be able *now* to assert that the record accurately represented his knowledge and recollection at the time. . . .
>
>     . . . .
>
> . . . If the witness can say, "I distinctly remember that when I made or saw this memorandum, about the time of the events, I was then conscious of its correctness," his verification is satisfactory.
>
> [ ]But if he relies, not on a present recollection of his past state of mind, but on other indications, such as a habit, a course of business, a check-mark on the margin, or merely the genuineness of his handwriting, then the certainty is of a lower quality, though still satisfactory for most practical purposes. In general, it is conceded that when the witness' certainty rests on his usual *habit or course of business* in making memoranda or records, it is sufficient.

3 J. Wigmore, Evidence § 747, at 97-98 (1970) (footnotes omitted); see also D. Binder, Hearsay Handbook § 15:5 (4th ed. 2013) ("An

---

[8] The fourth decision referred to in the Reporter's Notes, *Pinney v. Andrus*, 41 Vt. 631, 648 (1869), does not provide great detail as to the precise foundation laid by the witness but suggests that the witness testified that the document was created based on a prior accurate memory that the witness wished to preserve.

important prerequisite to admission of recorded recollection is that the witness vouch for its accuracy. . . . At least this was the general rule prior to the enactment of the Federal Rules of Evidence.").

¶ 46. As a result, even if the witness had no present recollection of recording the event, his or her testimony before the factfinder that the recorded recollection was truthful provided sufficient justification for admission of the statement. While the opportunity for cross-examination may not have been extensive in light of the failed memory, the witness was still subject to some questioning. She may have been examined about inconsistencies within the recorded recollection or between the recorded recollection and other evidence. She could have been examined as to any bias and as to any other area potentially relevant to her credibility. Compare J. Bellin, *Circumventing Congress: How the Federal Courts Opened the Door to Impeaching Criminal Defendants With Prior Convictions*, 42 U.C. Davis L. Rev. 289, 296-97 (2008) (explaining how early common law's preclusion of testimony from witnesses who had been convicted of felonies and "infamous crimes" evolved into a standard allowing impeachment based on such convictions), with V.R.E. 609 (allowing impeachment by certain past criminal convictions), and *United States v. Penny*, 60 F.3d 1257, 1264 (7th Cir. 1995) (stating common law and F.R.E. 608 permit impeachment based on witness's character for truthfulness). Whatever the scope of the testimony, it would have been under oath and the jury or judge would have been able to evaluate the witness's demeanor, sincerity, and believability.

¶ 47. Accordingly, I agree with the majority that there needs to be some direct affirmation from the witness that the recorded recollection is truthful and accurate.[9] I also agree that testimony that the witness is "generally honest" is insufficient — standing alone — to admit the prior recollection. Where I respectively depart from the majority is the narrow instances where the witness can apply his character or trait to the circumstances of the recorded recollection and proceed to testify as to his belief

---

[9] That conclusion is in tension with the Court's ruling in *Paquette*. 146 Vt. at 4, 497 A.2d at 360-61. The *Paquette* Court affirmed the admission of a recorded recollection based only on the witness's testimony that she had signed the statement around the time of the underlying event. *Id.* Absent some further testimonial confirmation as to the veracity of the statement, I do not believe a proper foundation supported the admission of the statement.

that the statement itself is truthful and accurate. If he is able to testify to that, it meets the requirement that the witness "adopt his prior statement as his own or aver that the statement accurately reflected his knowledge at the time of its making." *State v. Lander*, 155 Vt. 645, 645, 582 A.2d 128, 128 (1990) (mem.).

¶ 48. In my mind, the key to admissibility under Rule 803(5) is the witness's confidence and verification under oath — whether based on memory, habit, trait, practice, marking, or firm conviction — that, under the circumstances in which the statement was made, she would have been truthful in making it. Where there is a significant loss of memory, the witness simply cannot testify as to the actual facts underlying an event. Pursuant to Rule 803(5), she relies, instead, on a contemporaneous record concerning the event that she is confident is accurate. The witness adopts that recorded recollection, it is read to the factfinder, and it substitutes for her memory as to that part of her testimony. *Polite v. State*, 116 So. 3d 270, 279 (Fla. 2013) (per curiam). The factfinder may then evaluate it along with the other testimony from that witness, giving it the weight the factfinder chooses. It is the witness's endorsement of the prior statement under oath and the opportunity for the judge or jury to evaluate her credibility that satisfies the accuracy component of the Rule 803(5) analysis. See *id.* " '[T]he reliability of the assertions [sought to be admitted under Rule 803(5)] rests upon the veracity of a witness who is present and testifying.' " (quoting 2 K. Brown, McCormick on Evidence § 279, at 294 (6th ed. 2006)).

¶ 49. As noted above, such an approach is consistent with prior Vermont and related law as endorsed in the Reporter's Notes to Rule 803(5). See *Davis*, 56 Vt. at 427-29 (admitting statement where witness testified based on practice that he would not have affixed signature unless document were truthful); *Alvord*, 37 Mass. (20 Pick.) at 430-31 (similar).[10]

---

[10] The majority suggests that the fact that a writing is signed under oath is insufficient to meet the admissibility demands of Rule 803(5). *Ante*, ¶ 31. I believe the citation supporting that proposition was concerned with the idea that a document that has been signed under oath should not be able to establish its own admissibility without testimony from its author. See 2 Brown, *supra*, § 283, at 299 (explaining that witness must acknowledge accuracy of statement at trial and an assertion of accuracy on the statement is not sufficient). Consistent with *Davis*, if the witness examines the jurat and can testify that she would not have signed a

¶ 50. It is also in keeping with the views of a number of commentators. Wigmore provides:

> Is it enough that the witness (as is usual with *attesting witnesses* to a *document*) merely recognizes his handwriting and knows that he would not have written or signed without believing the record to be correct? Here the witness is really calling to his aid, not his specific business custom, but his general moral attitude; but, as a rule, the indication should be and is treated as sufficient.

3 Wigmore, *supra*, § 747, at 99. The Federal Practice and Procedure treatise is similar:

> The witness may testify either that he remembers making an accurate recording of the event in question which he now no longer sufficiently remembers, that he routinely makes accurate records of this kind, or, *if the witness has entirely forgotten the exact situation in which the recording was made, that he is confident from the circumstances that he would not have written or adopted such description of the facts unless that description truly described his observations at the time.*

30C K. Graham, et al., Federal Practice and Procedure § 7046 (2014) (emphasis added). As is Weinstein:

> [T]he foundation for their own record must include testimony either that the witness recalls having made an accurate record or that, *even though the witness does not now recall his or her state of mind when making or adopting the record, the witness would not have made or adopted it without knowing it was correct.*

5 J. Weinstein & M. Berger, Weinstein's Federal Evidence § 803.07[3][c], at 803-53 to 803-54 (2d ed. 2013) (emphasis added).

¶ 51. Case law generally supports that approach as well. *Polite v. State*, relied upon by the majority, would admit statements under Rule 803(5) if: "(1) although the witness does not recall the statement, the witness has a habit of recording such matters correctly or (2) *the witness believes the statement is correct because the witness would have been truthful in providing the*

---

statement under oath unless she was confident that it was accurate, it should be admissible. 56 Vt. at 428.

*statement."* 116 So. 3d at 279 (emphasis added); accord *United States v. Smith,* 197 F.3d 225, 230-31 (6th Cir. 1999) (concluding trial court properly admitted statement where witness testified she "would not have lied" in making statement to the police); *State v. Gorman,* 2004 ME 90, ¶¶ 36-40, 854 A.2d 1164 (affirming trial court's decision to admit statement of witness with post-traumatic stress disorder and declining health who could not recall testifying before grand jury where witness was able to testify that she would have been truthful to the grand jury); see also *Key v. State,* 890 So. 2d 1043, 1052 (Ala. Crim. App. 2002) (concluding there was no error in admitting grand jury testimony of witness whose memory was lost due to medication where witness testified that she "would have told the grand jury the truth"), *aff'd in part and rev'd in part on other grounds by Ex parte Key,* 890 So. 2d 1056 (Ala. 2003).

¶ 52. At base, admission of recorded recollections under Rule 803(5) relies on dual claims of honesty of the testifying witness. The witness who testifies that she remembers making a prior statement and intending to be truthful at that time relies on her honesty on the stand and at the time she made the statement. A business owner who claims her habit or practice was to make specific entries only upon reviewing inventory stores relies on her honesty at trial and when the entry was made. I fail to see a difference in kind between those situations — which the majority endorses — and the circumstance where a person is able to swear at trial that, based on her character and beliefs, she would have been truthful in giving a prior statement to the police, to a grand jury, or at a deposition.

¶ 53. Unfortunately, people lose their memories for many reasons. They may suffer from amnesia, have Alzheimer's disease, take powerful and debilitating medications, or incur a traumatic brain injury. If they are still able to testify in open court as to their honest belief that a statement they previously made was truthful, I believe that should be sufficient to sustain its admission under Rule 803(5). As the court stated in *Walker v. Larson:* "to exclude such a record when honestly made would be to reject the best and frequently the only means of arriving at the truth." 169 N.W.2d 737, 741 (Minn. 1969).[11]

---

[11] Given the multi-part test of admissibility under Rule 803(5) and the fact that it is only applicable in cases where a witness's memory is unable to be refreshed by

¶ 54. I reach that conclusion cognizant that the endorsement provided by the witness is not the only indicator of the prior statement's accuracy. Both the Federal Advisory Committee Notes and the Vermont Reporter's Notes to Rules 803(5) provide that a recorded recollection's contemporaneousness guarantees its accuracy. See F.R.E. 803 advisory committee's notes ("The guarantee of trustworthiness is found in the reliability inherent in a record made while events were still fresh in mind and accurately reflecting them."); Reporter's Notes, V.R.E. 803 ("Contemporaneousness is the guarantee of [a recorded recollection's] trustworthiness."). Given that additional assurance of reliability, a witness's statement that she would not have signed or made a statement unless it was truthful, or a similar affirmation, should be enough to allow admission of the statement.[12] It would then be up to the finder of fact to assess the weight to give the recorded recollection in light of all of the circumstances and other evidence in the case.

## II. Harmless Error

¶ 55. The trial court noted that admitting complainant's statement was a "close" call, even under *Marcy*'s totality-of-the-circumstances analysis. The question of admissibility under the test I would adopt is even closer. On the one hand, complainant did not merely state that she is an honest person; she actually tied her claim of honesty directly to the statement at issue in the case. From a review of the transcript, it is apparent that she was either holding a copy of the statement or had it with her on the witness stand. She first identified as her own the signature that accompanied the notarized statement. The following colloquy ensued:

[Q] Would you sign something that you had written that you didn't believe was true?

A. No.

---

the prior statement, see V.R.E. 612, I do not share the majority's concern that extending Rule 803(5) to such situations would amount to a catch-all exception to the hearsay rule. The exception here is limited and well cabined.

[12] Of course, each witness's endorsement would need to be examined carefully. Some witnesses may testify with confidence as to the veracity of the recorded recollection. Others may testify with less fervor as to the truthfulness or accuracy of the prior statement. See *Marcy*, 165 Vt. at 99-100, 680 A.2d at 82-83 (Allen, C.J., concurring). It is up to the trial judge to evaluate the vouching and determine whether it establishes sufficient reliability to admit the prior statement.

Q. Would you lie to the police?

A. No.

THE COURT: I'm sorry, what was your answer to that?

THE WITNESS: I wouldn't lie to the police.

On cross-examination, she reaffirmed that she would never lie to the police.

¶ 56. On the other hand, the witness also testified that her ability to accurately record what happened on the day in question was severely impaired. The witness candidly admitted that she was not only inebriated, but polluted with alcohol. On the day complainant wrote the statement, she claimed to have consumed a gallon of whiskey and two thirty packs of Budweiser. By her own admission, she had been drinking all day in the hot sun, was "extremely drunk," "trashed," and "a train wreck." She was also on medication. Based on those considerations, she conceded that the statement might not have been completely accurate.

¶ 57. As noted above, the trial court employed an improper standard in assessing the admissibility of the complainant's prior recorded statement. In light of the circumstances outlined in the preceding paragraph, I cannot with confidence say beyond a reasonable doubt that the court would have admitted the statement had it employed the standard I propose today. The complainant vouched for her truthfulness in making the statement but also gave cause for serious doubt as to the statement's accuracy. Cf. *United States v. Edwards*, 539 F.2d 689, 692 (9th Cir. 1976) (finding witness's intoxication at time of making prior statement went to weight of evidence, as opposed to its admissibility, where witness testified at trial that he believed the statement was accurate).

¶ 58. Because I cannot conclude as a matter of law in this case that the statement was admissible under the correct standard, the error in applying the improper standard was not harmless. See *State v. Carter*, 164 Vt. 545, 553, 674 A.2d 1258, 1264 (1996) (explaining that error is harmless only if appellate court "can state a belief that it was harmless beyond a reasonable doubt" (quotation omitted)); *State v. Barber*, 157 Vt. 228, 232, 596 A.2d 337, 339 (1990) (remanding for a new trial where, although trial court could have found breach of peace, it did not reach issue and evidence was not so overwhelming as to show breach of peace as

a matter of law). As a result, I would remand for a new trial and leave the admissibility of the statement under the new standard for consideration in the first instance by the trial judge.