2008 VT 135

**STATE of Vermont v. Mark JOHNSON**

[967 A.2d 1174]

No. 07-184

¶ 1. November 14, 2008. Defendant Mark Johnson appeals from his conviction for domestic assault. He argues that the trial court's decision to admit evidence of statements that he made to wife's brother-in-law and to police constituted reversible error. We reverse and remand.

¶ 2. The information alleged that, on the evening of August 26,. defendant kicked his wife, committing domestic assault in violation of 13 V.S.A. § 1042, and broke the taillight of a truck that she was driving, committing unlawful mischief in violation of 13 V.S.A. § 3701(c). The incident that gave rise to the charges occurred when defendant and wife were in the process of a divorce and wife went to the marital residence to remove her remaining belongings and pick up the family dog. While waiting for the dog, wife drove a short distance up the road to defendant's parents' house and stopped. Less than half a minute later, defendant pulled up behind her vehicle in his truck and bumped the rear of the vehicle. Defendant came up to the door of wife's vehicle, angrily opened it, and asked her why she was parked in front of his parents' house. He told her to leave, and they began struggling with the door. According to the State, during the struggle defendant kicked wife. A photograph of wife's injury was entered into evidence.

¶ 3. Wife called police, and they arrested defendant and transported him to the police barracks. Defendant provided a statement to police, alleging that wife had shown up at his house and that he had asked her to "please leave." According to

defendant's statement, when he and wife struggled over the door of her vehicle, she shut it on him, injuring his fingers. He denied kicking wife.

¶ 4. At trial, the State introduced defendant's statement, without objection, through a police officer. The officer added that he examined defendant's fingers and did not see signs of injury. The State also introduced testimony from a police sergeant, who testified that he spoke with defendant two days after the incident when defendant called the police station. Defendant identified himself to the sergeant and stated that he was very upset about having been arrested, that wife had lied, and that he did not like the way he had been treated by the police. The sergeant testified that defendant told him he did not commit the charged crimes, and that if he was going to get in trouble for it, he would like to get wife in trouble. The State then asked, "[s]o the defendant told you that he was going to lie to get his ex in trouble?" to which the sergeant responded "yes, he did." Defendant then objected and moved to strike "on relevance again 403 grounds." The court overruled his objection.

¶ 5. The sergeant then testified that defendant called 911 two weeks later to report a fight involving a weapon at the marital residence. Defendant objected on relevancy grounds, and the court overruled his objection. The sergeant stated that when he arrived at the residence in response to defendant's call, they found wife inside, cleaning the residence with another person. The police did not find a weapon. When the sergeant spoke to defendant, defendant indicated that wife's car was the deadly weapon in question.

¶ 6. During a subsequent break in the proceedings, defendant reiterated his relevancy objection to the sergeant's testimony. The State argued that defendant's statement that he would lie to get wife in trouble and his false police report went directly to his credibility. The court noted

defendant's objection. After closing arguments, defendant moved to strike the sergeant's testimony, arguing that defendant's statements were not relevant. The court addressed the substance of defendant's objection as follows:

> I think it's fair to say it goes to the credibility of the statement . . . . I mean it talks about a lot of this has to do with motivation and you know what was the motive when these things were done and said. I agree that so much this has been kind of, we've gone far afield. The thing is that some of the testimony went back to the credibility of witnesses, you know, people said things that were relevant and probative, and then we have all of this other business about, you know, defense witnesses who said she saw things, and so that they have motives. Did they have bias? You know, what was their conduct? How did they behave? What did they say? I think most of that has come in without objection because I think it's clear that this is part of the case.

¶ 7. Wife's brother-in-law, who owned the truck wife used on the evening in question, also testified for the State. He explained that he had helped wife move her belongings, and that he had also dropped off some of defendant's belongings at defendant's workshop. On the evening of the charged incidents, he received an angry, threatening voicemail message from defendant. The message was played for the jury over defendant's relevancy objection. In this message, defendant identified himself and stated:

> I thought you were smart enough to stay out of this and we can stay friends, but I just found out that you were the stupid fucker that brang [sic] that stuff to the garage and dropped all of my stuff off here. You better stay the fuck away from me now.

¶ 8. Defendant's parents and his girlfriend testified for the defense. Defendant's father stated that he heard defendant tell wife to leave and to leave his parents alone. Defendant's mother also testified that she heard yelling, and she stated that she saw defendant slamming wife's vehicle door while wife was trying to open it. According to defendant's mother, this occurred several times, and then wife drove away. Defendant's mother further testified that defendant told her that wife hurt his hand when she opened the door, and defendant's mother observed that defendant's hand was red, swollen, and bleeding. Defendant's girlfriend testified that she was in defendant's truck during the incident. She stated that defendant exited his vehicle and talked to wife, asking her why she was stopped in front of his parents' house. She observed wife's door opening and closing several times and then saw wife drive away. She stated that she did not see defendant kick wife. Defendant did not testify. The jury found defendant guilty of domestic assault and acquitted him of the unlawful-mischief charge. This appeal followed.

¶ 9. On appeal, defendant argues that the court erred by admitting the voicemail message that he left for wife's brother-in-law. He also asserts that the court erred by admitting testimony of his statement that he would lie to get wife in trouble and of his phone call to police reporting that there was a fight at the marital residence involving a deadly weapon. Defendant maintains that these errors require the reversal of his conviction.

¶ 10. We first address defendant's challenge to the admission of the voicemail message. The record shows that the par-

ties discussed the admissibility of this evidence before trial. The State argued that the voicemail message was relevant to its theory of the case and that it was part of the charged incident. The State theorized that defendant was very upset that evening, because he had just discovered that wife's brother-in-law had moved his belongings out of the marital residence. Defendant argued that the evidence was irrelevant and that the voicemail message had nothing to do with the charged incidents. The court disagreed with defendant, and indicated that defendant could renew his objections when the testimony was offered. At trial, defendant again objected to this evidence on relevancy grounds, and the court overruled his objection.

¶ 11. On appeal, defendant reiterates his assertion that this evidence was irrelevant. He argues that there was no evidence to show that the voicemail message caused his subsequent interactions with wife. He complains that the voicemail message was, in essence, improper extrinsic evidence of a bad act, and he states that the court failed to consider whether the probative value of the evidence outweighed its prejudicial effect under Vermont Rule of Evidence 403. According to defendant, because the court did not follow the necessary procedures under Rule 404(b), and because it admitted highly prejudicial evidence over his objection, it committed reversible error.

¶ 12. The only objection that defendant raised to this evidence at trial was a relevancy objection, and thus, we do not consider his argument that the evidence was inadmissible under Rule 404(b), or his assertion that the court erred by failing to conduct a Rule 403 analysis. V.R.E. 103(a)(1); *State v. Bissonette*, 145 Vt. 381, 392, 488 A.2d 1231, 1237-38 (1985). We reject defendant's argument that the court abused its discretion in finding the voicemail message relevant. *State v. Powers*, 163 Vt. 98, 99-100, 655

A.2d 712, 713 (1994) ("Trial courts have wide latitude in determining whether evidence is relevant and admissible, and we will reverse only if the court withheld or exercised its discretion on clearly untenable or unreasonable grounds."). "Relevant evidence" is evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." V.R.E. 401. In other words, "relevant evidence" is " 'evidence that in some degree advances the inquiry, and thus has probative value.' " Reporter's Notes, V.R.E. 401 (quoting McCormick on Evidence § 185, at 438 (2d ed. 1972)). Here, defendant left an angry threatening voicemail message for wife's brother-in-law just before his alleged assault on wife. The message concerned the removal of his belongings from the marital home, and it was left for the owner of the vehicle that wife was driving that evening. The evidence supported the State's theory of the case because it showed that defendant was in fact very angry and upset just before the time he allegedly assaulted wife. The State did not need to prove that the voicemail message "caused" defendant to assault wife in order for this evidence to be considered relevant. We find no abuse of discretion in the court's conclusion that this evidence "advanced the inquiry."

¶ 13. We turn next to the sergeant's testimony regarding defendant's statement to the police sergeant and his 911 call. Defendant objected to this testimony at trial, arguing that it was irrelevant, and even if relevant, the prejudicial effect of the evidence outweighed its probative value under Rule 403. On appeal, defendant argues that this testimony was only relevant as character evidence about a prior bad act or to challenge his credibility and was inadmissible under Rules 404(b) and 608(b). Defendant also argues that the prejudicial effect of the testi-

mony outweighed any probative value it may have had.

¶ 14. Our threshold inquiry is whether the sergeant's testimony is relevant. As discussed above, relevant evidence is evidence that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." V.R.E. 401. Relevant evidence advances the inquiry and thus has probative value. The State asserts that the sergeant's testimony regarding defendant's statements was relevant and probative to (1) impeach defendant's credibility, (2) show defendant's motivation and intentions at the time of the assault, and (3) demonstrate the general context of the victim's abusive relationship with defendant.

¶ 15. We first address the State's main theory — that the sergeant's testimony could be used to impeach defendant's credibility. It is important to place this claim in context. Defendant did not testify in this case so he did not place his credibility in issue in this way. He did, however, give two statements to the police denying that he committed the crimes for which he was charged. Defendant did not put those statements in evidence; they were placed in evidence by the State. Thus, the State is arguing that it can put defendant's statement in evidence as the basis for it to introduce impeaching evidence. For two reasons, this method of justifying the introduction of impeaching evidence against a nontestifying defendant is not allowed.

¶ 16. First, for a statement to be impeachable, it generally must be offered for the truth of the matter asserted. See *State v. Gemler*, 2004 VT 3, ¶ 12, 176 Vt. 257, 844 A.2d 757 ("Because the statement was not introduced for the purpose of proving the truth of the matter asserted, but to explain the police conduct, the credibility of the informant was not at issue."); *United States v. Paulino*, 445 F.3d 211, 217 (2d Cir.) ("Equally clearly established is the principle that a statement not offered to prove the truth of the matter asserted may not be impeached . . . ."), *cert. denied*, 549 U.S. 980 (2006); *United States v. McClain*, 934 F.2d 822, 833 (7th Cir. 1991) (stating that there is nothing to impeach if a declaration is not being placed in evidence for its truth). Here, the State did not offer defendant's exculpatory statements for the truth of his denial, as the State prosecuted defendant despite the fact he denied committing the assault.[1] The sole purpose of introducing the exculpatory statements was, apparently, to impeach them.

¶ 17. Second, it is a criminal defendant's — and not the State's — choice to place his credibility at issue. See, e.g., *United States v. Valencia*, 61 F.3d 616, 619 (8th Cir. 1995) (explaining that defendant "in effect opened the door for the government's cross-examination by attempting to explain away or minimize his guilt"); *United States v. Vigliatura*, 878 F.2d 1346, 1350 (11th Cir. 1989) (per curiam) ("Once a criminal defendant chooses to testify, he places his credibility in issue as does any witness." (quotation omitted)); *United States v. Noble*, 754 F.2d 1324, 1331 (7th Cir. 1985) ("When [defense] counsel introduced the taped conversation into evidence containing the defendant's exculpatory hearsay statements, the defense counsel made the defendant's credibility an issue."). In general, the State should not be permitted to circumvent a criminal defendant's decision of whether to place his own credibility in issue by introducing a defendant's statement and then impeaching that

---

[1] There is doubt as to whether defendant's exculpatory statements were admissible at all, but, unsurprisingly, defendant did not object to their admission so we assume they were admissible.

statement.[2] Cf. *United States v. Morlang,* 531 F.2d 183, 190 (4th Cir. 1975) (holding that impeachment by the calling party is impermissible "where employed as a mere subterfuge to get before the jury evidence not otherwise admissible"); *United States v. Webster,* 734 F.2d 1191, 1192 (7th Cir. 1984) (noting that although *Morlang* is a prerules case, its limitation on the prosecutor's rights under Rule 607 "has been accepted in all circuits that have considered the issue").

¶ 18. Here, defendant did not testify or otherwise place his credibility at issue, nor did the State offer his exculpatory statement for the truth of the matter asserted therein. In these circumstances, we hold that the introduction by the State of defendant's exculpatory statement does not make defendant's credibility subject to impeachment by the State.

¶ 19. Even if impeachment were allowed generally, the evidence the State used to impeach here would not be admissible. Rule 608 allows impeachment of a witness who testifies, but does not allow specific instances of conduct to be shown by extrinsic evidence. See V.R.E. 608(b); *John A. Russell Corp. v. Bohlig,* 170 Vt. 12, 22, 739 A.2d 1212, 1220 (1999) (holding that testimony by a former employer about an employee's termination for dishonesty was inadmissible under Rule 608(b)); *State v. Washington,* 164 Vt. 609, 611-12, 669 A.2d 550, 552 (1995) (mem.) (upholding exclusion of a photograph under Rule 608(b)). A comparable rule allows impeachment of a witness who does not testify, but whose statement is admitted as hearsay, or as nonhearsay under

Rule 801(d)(2)(C), (D) or (E). See V.R.E. 806.[3] The evidence used to impeach the out-of-court statement must be of a type admissible under Rule 608. See *United States v. Saada,* 212 F.3d 210, 221 (3d Cir. 2000) (holding that "Rule 806 does not modify Rule 608(b)'s ban on extrinsic evidence of prior bad acts in the context of hearsay declarants, even when those declarants are unavailable to testify"); *United States v. White,* 116 F.3d 903, 920 (D.C. Cir. 1997) (per curiam) (same).

¶ 20. In this case, even if the State were allowed to impeach defendant's exculpatory statements by attacking his credibility, they are bound by the limitation that they cannot use extrinsic evidence for this purpose. The testimony of the police sergeant is exactly the type of extrinsic evidence that is prohibited.

¶ 21. We also reject the State's alternative rationales for introduction of the sergeant's testimony — that it shows defendant's motivations and intent at the time of the assault, and that it provides context for the charged conduct. Even under a broad definition of relevancy, we do not see how the later calls about the police investigation show defendant's motivation and intent at the time of the alleged assault. With respect to context, we have

---

[2] There would also be implications under Rule 609 of permitting the State to offer and then impeach a defendant's statement. The State would then be allowed to impeach a nontestifying criminal defendant with his prior convictions, even though defendant did nothing to put his credibility at issue.

[3] We discuss Rule 806 to show that this is not the kind of evidence that would be admitted even if the State could overcome the threshold requirement of relevancy. In this case, Rule 806 does not directly apply because defendant's exculpatory statements (1) were not hearsay as they were not offered to prove the truth of the matter asserted and (2) were not "offered against" him, and thus, not within the limited categories of nonhearsay admissions subject to Rule 806. See V.R.E. 801(c), (d)(2). This is not to say that a defendant's exculpatory statements can never be "offered against" him, such as to prove a guilty mind, but rather that in this case, they were not.

no rule that broadly allows evidence for this purpose. Indeed, any conceivable evidence might fit under this broad and vague umbrella, abolishing the limit of relevancy. As discussed in *State v. Hendricks*, 173 Vt. 132, 787 A.2d 1270 (2001), we have allowed limited evidence of prior incidents of domestic abuse on the victim of charged abuse to show context for the charged conduct. We allow such evidence because " 'a single act of domestic violence, taken out of its situational context, [is] likely to seem incongruous and incredible to a jury.' " *Id.* at 139, 787 A.2d at 1276 (quoting *State v. Sanders*, 168 Vt. 60, 62, 716 A.2d 11, 13 (1998)); see also *id.* at 145, 787 A.2d at 1280 (Dooley, J., concurring). No such need or justification applies here.

¶ 22. The burden of proving admissibility lies with the proponent of the evidence. *State v. Goodnow*, 162 Vt. 527, 529, 649 A.2d 752, 754 (1994). The State here has not satisfied that burden. The trial court erred in admitting the sergeant's testimony relating defendant's statements about his willingness to lie to injure wife and his 911 call.

¶ 23. Despite the error in admitting the evidence of defendant's statements, we can affirm if the erroneous admission was harmless beyond a reasonable doubt. See *State v. Oscarson*, 2004 VT 4, ¶ 29, 176 Vt. 176, 845 A.2d 337. We cannot conclude that the error made here was harmless under that standard. The evidence of the events from the witnesses was conflicting, and the State's case was hardly overwhelming. In fact, the jury acquitted defendant of one of the charged offenses. While the erroneously admitted evidence was tangential, it was highly prejudicial. Moreover, the State in its closing argument emphasized this evidence and argued that the sergeant's testimony showed that defendant was not credible in his denials.

*Reversed and remanded.*