2014 VT 91




State v. Spaulding (2013-208)


 


2014 VT 91


 


[Filed 08-Aug-2014]


 


NOTICE:  This opinion is
subject to motions for reargument under V.R.A.P. 40 as well as formal revision
before publication in the Vermont Reports.  Readers are requested to
notify the Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by
mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont
05609-0801, of any errors in order that corrections may be made before this
opinion goes to press.


 



 
 2014 VT 91

 

  



 
 No. 2013-208

 

  



 
 State of Vermont

 

 
 
 Supreme Court

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
 On Appeal from

 

 
 
      v.

 

 
 
 Superior Court, Windham Unit,

 

 
 
  

 

 
 
 Criminal Division

 

 
 
  

 

 
 
  

 

 
 
 Allen Spaulding

 

 
 
 March Term, 2014

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
 John
 P. Wesley, J.

 

 
 
  

 

 Ashley A. Harriman, Windham County Deputy State’s Attorney,
Brattleboro, for 


  Plaintiff-Appellee.


 


Matthew F. Valerio, Defender General, and Kerry DeWolfe,
Appellate Defender, Montpelier, for


  Defendant-Appellant.


 


 


PRESENT:    Reiber, C.J., Dooley, Robinson
and Crawford, JJ., and Tomasi, Supr. J.,


                    
Specially Assigned


 


 


¶ 1.            
CRAWFORD, J.   Defendant Allen Spaulding appeals from
his conviction on domestic assault charges following a jury trial.  The
issues on appeal are the admission of the complainant’s written statement as
past recollection recorded and claims of insufficiency of the evidence and
improper closing argument.  We reverse on the hearsay issue. 


¶ 2.            
The following facts are drawn from testimony of witnesses and exhibits
introduced at trial.  On July 30, 2012, defendant and the complainant
spent the day at a lake.  They had been in a live-in romantic relationship
for the previous year and a half, although the complainant had recently ordered
defendant out of her home and obtained a no-trespass order against him. 


¶ 3.            
Over the course of the day, the complainant drank heavily.  She
described herself as “trashed” when the couple returned to her home in the
evening.  The complainant called 911 at 11:45 p.m. seeking
assistance.  A portion of the 911 recording was admitted into evidence and
played for the jury.  In the recording, the complainant told the
operator that she was calling about a domestic incident.  She stated that
she had woken up on the floor.  She believed her jaw was broken.  She
said that defendant had been in her house despite the no-trespass order and
that he “had me around the neck.”  She said she was bleeding and had lost
consciousness.  


¶ 4.            
The first police officer to arrive found the complainant bleeding from a
cut lip.  While the officer was present, defendant called the complainant
on her cell phone.  When the officer learned that defendant was nearby, he
left the complainant’s home to arrest him.  On the officer’s return to the
apartment, he and the complainant finished drafting a written statement, which
she signed under oath.  


¶ 5.            
The statement says that defendant came to complainant’s home at 7:30 pm
looking for “money, cigarettes, food etc.”  It states that after an
argument, defendant grabbed the complainant by the throat, dragged her, punched
her in the mouth, and threatened to kill her before taking her money and
cigarettes.  She complained of severe pain in her jaw, lower back, head, and
mouth.  


¶ 6.            
Exactly who wrote the statement remains disputed.  At trial, the
complainant testified that she had no recollection of writing the statement and
did not believe that it looked like her handwriting.  She testified that
she was extremely intoxicated and recalled nothing of the evening except being
taken to the hospital by ambulance.  She agreed that the signature was
hers.  She testified that she would not sign a statement if she did not
believe it to be true, and would not lie to a police officer.  The officer
testified that he helped the complainant as she wrote the statement.  The
statement is signed under oath and notarized by the officer. 


¶ 7.            
Defendant was charged with aggravated domestic assault, domestic assault,
and unlawful trespass.  The Windham Criminal Division conducted a one-day
jury trial on January 15, 2013.  Over defendant’s objection, the court
admitted the complainant’s written statement into evidence as “past
recollection recorded” under Vermont Rule of Evidence 803(5).  In
conformance with the requirements of Rule 803(5), the statement was read aloud
to the jury but not sent into the jury room at the time of deliberations. 
At the close of the State’s case, defendant moved for judgment of acquittal on
all three counts.  The court denied the motion.  Defendant was
convicted on the domestic assault charges.  The jury found him not guilty
on the trespass charge.  This appeal followed. 


¶ 8.            
On appeal, defendant argues that the evidence is insufficient to support
the verdict, that the trial court erred in admitting the complainant’s written
statement, and that the prosecutor’s statements during closing arguments asking
the jurors to put themselves in the victim’s shoes amount to plain error. 
We begin with the sufficiency-of-the-evidence claim.  In reviewing the
court’s denial of defendant’s motion for acquittal, we apply “an exacting
standard.”  State v. Myers, 2011 VT 43, ¶ 41, 190 Vt. 29, 26 A.3d
9.  We view the evidence in the light most favorable to the State,
“excluding any modifying evidence, and determine whether that evidence
sufficiently and fairly supports a finding of guilty beyond a reasonable
doubt.”  State v. Brochu, 2008 VT 21, ¶ 21, 183 Vt. 269, 949 A.2d
1035 (quotation omitted).  “[A] judgment of acquittal is proper only if
the prosecution has failed to put forth any evidence to substantiate a jury
verdict.”  State v. Couture, 169 Vt. 222, 226, 734 A.2d 524, 527
(1999).


¶ 9.            
Defendant was charged with two counts of first-degree aggravated
domestic assault.  13 V.S.A. § 1043.  The aggravating circumstance
for one charge was defendant’s prior conviction of aggravated domestic assault.
 Id. § 1043(a)(3).  The second charge included an allegation
of “serious bodily injury to a family or household member” in violation of 13
V.S.A. § 1043(a)(1).  As to the latter charge, defendant argues that
the evidence does not establish the element that defendant attempted to cause
serious bodily injury because the sole evidence to establish this was the
complainant’s statement to the 911 operator that defendant had her “by the
neck” and her prior recorded statement that she was “grabbed by the
throat.”  Defendant claims that because both these statements were
admitted under hearsay exceptions the quality of the evidence is too thin to
support a conviction.  In support of this argument, defendant relies on State
v. Robar, 157 Vt. 387, 395,  601 A.2d 1376, 1380 (1991), in which this
Court held that the State could not meet its burden of proof solely based on a
past recollection recorded or a prior inconsistent statement, “unless the prior
statement meets specific standards of reliability.”  


¶ 10.        
The past recollection recorded admitted at trial supports the charge of
aggravated assault.  The written statement recounts that defendant came
into the complainant’s apartment, grabbed her throat, punched her in the mouth,
threatened to kill her, and caused severe pain to her lower back, head and
mouth.  It is not necessary, however, to make a determination of whether
the statement meets the reliability standard set forth in Robar because,
in this case, the conviction is supported by additional evidence beyond the
past recollection recorded.  The other evidence demonstrating that
defendant attempted to cause or willfully caused serious bodily injury to the
complainant included the 911 call, the responding officer’s testimony, and the
physical evidence.  During the 911 telephone call, the complainant stated
that defendant had been in her house, defendant had her around the neck, she
was bleeding and she lost consciousness.[1] 
The responding officer testified that the complainant was “sobbing [and]
visibly upset” when he responded to the 911 call, the complainant was bleeding
from a cut on her lip, blood was spattered on her shirt, and there were reddish
marks on her throat.  The State also introduced photographs depicting the
injuries to the complainant’s lip and throat.  Taken together, this
evidence was sufficient to show that defendant attempted to cause or willfully
caused serious bodily injury to the complainant.  Therefore, the court
properly denied defendant’s motion, and defendant is not entitled to acquittal.



¶ 11.        
Next, we address defendant’s argument that the complainant’s prior
recorded statement was improperly admitted.  In 1844, this Court adopted
the English common-law rule permitting testimony from a witness based on his
past written statements despite the absence of any current memory of the
events.  


There are many facts which no memory
could possibly carry along, without the aid of memoranda; and when they are
committed to writing the detail of the facts is dismissed from the memory, and
they are the sooner forgotten, for the very reason that the writing is relied
upon.  All that is necessary in such a case is that the witness should
have a general recollection of the transaction, and also that the memorandum
was correctly made at the time it was made.


Mattocks v. Lyman, 16 Vt.
113, 117-18 (1844).  At the federal level, this common-law rule was
codified among the hearsay exceptions as Federal Rule of Evidence 803(5). 
Vermont subsequently adopted the federal rule in the Vermont Rules of Evidence
without alteration.[2] 
State v. Paquette, 146 Vt. 1, 3, 497 A.2d 358, 360 (1985).  


¶ 12.        
Rule 803(5)’s exception for past recollection recorded is distinct from
the use of a writing to refresh recollection.  See V.R.E. 612 (allowing
witness to use writing or object to refresh his memory at trial).  In the
latter case, the evidence is the witness’s testimony based on a memory which
has improved through resort to some record or prior report.  Past
recollection recorded, however, is substantive evidence of the events
described.  If the statement meets foundational requirements, it is
admissible as a substitute for testimony based on the witness’s memory. 
See State v. Lander, 155 Vt. 645, 645, 582 A.2d 128, 128-29 (1990)
(mem.) (explaining difference between use of prior written statement to refresh
recollection and as past recollection recorded).


¶ 13.        
Rule 803(5) establishes three foundational requirements for
admissibility:  (1) that the declarant once had knowledge of the events
described in the statement; (2) that he or she no longer has sufficient
recollection to testify fully or accurately about the events; and (3) that the statement
is “shown to have been made by the declarant or, if made by one other than the
declarant, to have been examined by the declarant and shown to accurately
reflect the declarant’s knowledge when the matters were fresh in his memory.”
 Paquette, 146 Vt. at 3, 497 A.2d at 360.


¶ 14.        
There is no dispute in this case concerning the first two
elements.  The complainant was present during the events which gave rise
to the criminal charges and therefore once had knowledge of them.  She
testified at trial that she had very limited recollection of the evening of the
altercation due to excessive drinking.  The parties disagree over whether
there was sufficient evidence to meet the third requirement.  


¶ 15.        
Defendant argues that the statement was created by the investigating
police officer and neither made nor adopted by the complainant.  He also
argues that the statement should have been excluded because the complainant did
not testify at trial that it correctly reflected her knowledge of the events. 



¶ 16.        
The evidence at trial concerning the statement came from two
sources:  the complainant and the investigating police officer.  The
complainant testified that she was extremely intoxicated after drinking all day
at the lake and had no memory of writing the statement.  She testified
that she had seen the statement and “I can tell you that it doesn’t even really
look like my writing.”  She was able to identify her signature at the
bottom of the statement, responding “[i]t looks like my signature.”  


¶ 17.        
The investigating officer testified concerning the statement and his own
observations at the scene.  He stated that when he arrived, he observed
that the complainant had a cut lip and red marks around her neck, and that
there were drops of what appeared to be blood on the sofa.  He described
the complainant as emotionally upset but not too intoxicated to complete a
sworn statement.  He stated that he assisted the complainant in writing
the statement by telling her the type of information to include.  He
reviewed it with her and had her swear to it.  He then notarized the
statement.  He found the written statement to be consistent with earlier
verbal statements made to him by the complainant. 


¶ 18.        
This evidence was sufficient to establish the foundational requirement
that the statement was made or adopted by the witness.  The dispute
between the parties on appeal is whether the complainant wrote it or whether
the handwriting is the officer’s.  The dispute is immaterial since the complainant
testified that the signature was likely to be hers.  The evidence that she
swore to the contents before the officer was uncontradicted.  Whether she
wrote the statement herself with assistance from the officer, as the State
contends, or swore to the truth of a statement which he had prepared for her,
as defendant argues, Rule 803(5) applies equally.  See V.R.E. 803(5)
(stating that statement must have been “made or adopted by the witness”). 
In either event, the trial court acted within the scope of its discretion in
determining that the statement was the complainant’s.  


¶ 19.        
The final element of Rule 803(5) also requires evidence that the
statement accurately reflects the witness’s knowledge at the time she made
it.  Paquette, 146 Vt. at 3, 497 Vt. at 360.  It is frequently
established by asking the witness directly whether her statement was accurate
when written.  A witness with no memory of providing the statement may be
unable to provide this assurance of reliability.  A recanting or uncooperative
witness may be unwilling to do so.  


¶ 20.        
Decisions in Vermont and elsewhere have divided on the question of
whether the witness must vouch for the reliability of her statement or whether
circumstantial evidence is an acceptable substitute.  We first addressed
the issue in State v. Lander.  In a brief memorandum decision, this
Court held that a prior written statement lacked sufficient foundation to be
admitted into evidence where “[a] review of the record indicates that the
witness did not adopt his prior statement as his own or aver that the statement
accurately reflected his knowledge at the time of its making.”  158 Vt. at
645, 582 A.2d at 128.  Lander indicates that the declarant must
testify to the accuracy of his own statement for it to be admissible under Rule
803(5).  


¶ 21.        
The Court returned to the issue in State v. Marcy, 165 Vt. 89,
680 A.2d 76 (1996), which, like the present case, was a domestic violence
prosecution.  As in this case, the complaining witness in Marcy
appeared reluctant to cooperate with the prosecution and testified that she did
not remember the assault or calling the police for help.  The prosecution
offered a tape-recorded interview that the witness had provided to the police
shortly after the incident.  In the absence of testimony from the
complaining witness that the statement accurately reflected her knowledge of
the assault, the prosecution offered corroborating testimony from the police
officer and a domestic violence victim advocate who had spoken with the
complaining witness.  These witnesses testified that the tape recording
was consistent with information about the assault derived from other
sources.  As in this case, the complaining witness testified that in
general she would not give a false statement to police. 


¶ 22.        
The Court divided three ways.  A two-justice plurality affirmed the
admission of the statement on the ground that Rule 803(5) does not require
testimony from the declarant that the statement accurately reflected her recollection
of the events.  Id. at 95-96, 680 A.2d at 79-80.  This opinion
permitted the trial judge to consider the totality of the circumstances,
including consistency between the statement and other evidence, to determine
its reliability.  Id.  Two justices filed a concurring
decision in which they wrote that the witness’s statement that she would not
lie to a police officer was sufficient evidence of reliability.  Id.
at 100, 680 A.2d at 82-83 (Allen, C.J., concurring).  Since this testimony
came from the witness herself, they saw no conflict with the Lander
requirement that the witness establish the requisite foundation through her own
testimony.  Id.  Justice Dooley dissented on the ground that
under Lander, the statement could not be admitted in the absence of
testimony from the declarant herself that the statement accurately reflected
her understanding at the time of the events.  Id. at 106, 680 A.2d
at 86 (Dooley, J., dissenting).    


¶ 23.        
The Marcy plurality relied on United States v. Porter, 986
F.2d 1014 (6th Cir. 1993), in which the declarant was present at trial but
unable or unwilling to testify to the accuracy of her prior statement. 
The Sixth Circuit affirmed the district court’s admission of a prior written
statement by the recalcitrant witness, who was described by the trial judge as
“disingenuous” and “evasive,” on the basis of circumstantial factors indicating
trustworthiness.  Id. at 1017.  These factors included the
signing of the statement under penalty of perjury and the inclusion of
“considerable detail which was internally consistent, as well as consistent
with other uncontradicted evidence which had already been admitted.”  Id. 
The trial judge also considered the fact that the witness had given the
statement at a time when she was fearful of reprisal by the defendant.  Id. 
The Sixth Circuit reasoned that:


Rule 803(5) does not specify any
particular method of establishing the knowledge of the declarant nor the
accuracy of the statement.  It is not a sine qua non of admissibility
that the witness actually vouch for the accuracy of the written memorandum.
 Admissibility is, instead, to be determined on a case-by-case basis upon
a consideration, as was done by the district court in this case, of factors
indicating trustworthiness, or the lack thereof.


Id.  Porter is
the leading case for the position that the witness need not testify to the
accuracy of his or her prior statement in order for it to be admissible under
Rule 803(5) if reliability can be established through other foundational
evidence. 


¶ 24.        
The most recent case adopting the alternative position, which requires
that the witness vouch at trial for the accuracy of his or her prior statement,
is Polite v. State, 116 So. 3d 270 (Fla. 2013) (per curiam).  In Polite,
a woman who had previously provided a sworn written statement to police
identifying one of three armed men who had broken into her home had great
difficulty recalling the events or the statement at trial.  The trial
court admitted the statement.  On appeal, the Florida Supreme Court
reversed on the ground that, because the prior statement functions as a
substitute for the witness’s memory, it can be admitted only on the basis of
testimony from the witness herself that the statement accurately reflected her
recollection at the time.  Id. at 279.  The court held that
“ ‘the reliability of the assertions rests upon the veracity of a witness
who is present and testifying.’”  Id. (quoting 2 K. Brown,
McCormick on Evidence § 279, at 294 (6th ed. 2006)).  The Polite
decision rejected the rule articulated in Porter and adopted by the
plurality in Marcy that proof of reliability can be found within the
totality of the circumstances of the case even when the witness herself is
unable to vouch for the reliability of her prior statement.  Id. at
278.


¶ 25.        
We are persuaded by Justice Dooley’s dissent in Marcy and by the Polite
decision.  We return today to the rule expressed in Lander that a
specific avowal of the reliability of the recorded recollection from the
declarant herself is necessary for admissibility.  We reject the plurality
opinion in Marcy that the necessary foundation can be established by
finding the prior statement to be consistent with other evidence or upon
testimony that the witness generally tells the truth.  See CTS Corp. v.
Dynamics Corp. of Am., 481 U.S. 69, 81 (1987) (“As the plurality
opinion . . . did not represent the views of a majority of
the Court, we are not bound by its reasoning.” (footnote omitted)). 


¶ 26.        
We start our analysis by considering the shortcomings of the
“totality-of-the-circumstances” rule in this particular case.  Only three
circumstances supported the State’s position that the statement was a reliable
reflection of the complainant’s memory.  The first was the complainant’s
testimony at trial that she would neither “sign something that [she] had
written that [she] didn’t believe was true,” nor would she lie to the
police.  The second was that she signed the statement under oath. 
The third was that she was injured in a manner consistent with her report to
the 911 operator that defendant “had [her] around the neck.”  


¶ 27.        
The meager quality of these indicia of reliability illustrates the
difficulty with the totality-of-the-circumstances rule.  There may be
witnesses who will brazenly testify in court that they are in the habit of
lying, especially to the police, but they are surely small in number. 
People are more likely to describe themselves as mainly honest.  In court
as elsewhere in life, we discount such general claims of truthfulness and
honesty.  See V.R.E. 608(a) (stating that evidence of truthful character
is admissible only after it has been attacked); C. Kilpatrick, Nixon Tells
Editors, “I’m Not a Crook,” Wash. Post, Nov. 18, 1973, at A01.  


¶ 28.        
Courts have divided on whether testimony from the witness about his or
her habitual inclination towards truth-telling is sufficient to establish the
reliability of a specific statement.  Compare Walker v. Larson, 169
N.W.2d 737, 742 (Minn. 1969) (stating that “general moral attitude” is
typically sufficient to establish reliability), with Hodas v. Davis, 196
N.Y.S. 801, 802-03 (N.Y. App. Div. 1922) (holding testimony that witness had
never before signed a false statement to be insufficient).  The skeptical
view of such statements is best captured by Mueller and Kirkpatrick in their
discussion of Rule 803(5): 


  If the witness cannot recall
making the statement despite the fact that the occasion was unique or
nonroutine in her life, because of the passage of time or for indeterminable
reasons rooted in the transience of memory, or perhaps in psychology or
interest, the question arises whether it is enough if she testifies simply that
she would not have signed or prepared it if it were not true.  Probably
even this tepid endorsement is enough if nothing better may be had, since it
provides testimonial support.  It is only a claim of general honesty,
however, that sheds faint circumstantial light and is the kind of thing nearly
anyone would say almost any time.  Accepting such an endorsement reduces
the accuracy requirement, and judges should have leeway to exclude statements
offered on this basis almost as a matter of instinct if they doubt the
substance of the endorsement, and some decisions require exclusion in this
situation.


4 C. Mueller & L.
Kirkpatrick, Federal Evidence § 8.76 (4th ed. 2014) (footnotes omitted).


¶ 29.        
In the face of such faint praise, we cannot accept a claim of general
honesty as the basis for admission of the prior statement.  We interpret
our version of Rule 803(5) to require specific evidence of reliability from the
declarant.  This could include testimony that the declarant is confident
that she was telling the truth on that particular occasion.  See, e.g., United
States v. Patterson, 678 F.2d 774, 779-80 (9th Cir. 1982) (holding grand
jury transcript admissible where declarant testified that he did not believe he
had lied to grand jury and that he had recalled the events better when he
testified to grand jury).  Indeed, that would be the most conventional
foundation for admissibility.  A decision to admit a recorded
recollection, however, cannot depend upon a general statement that the
declarant is not in the habit of lying. 


¶ 30.        
For these reasons we also reject the position of the two concurring
justices in Marcy who concluded that the testimony from the complaining
witness that she usually told the truth was sufficient to establish the
reliability of the statement.  Such a description of a habit or practice
of honesty—particularly as the witness perceives it in herself—is an
insufficient basis for admission.  


¶ 31.        
Similarly, without minimizing the solemn importance of oath-taking, the
notarization of a statement by an intoxicated person in the middle of the night
provides scant assurance of its truth.  See 2 Brown, supra, § 283,
at 299 (“An assertion of [a statement’s] accuracy in the acknowledgment line of
a written statement or such an acknowledgment made previously under oath is not
sufficient.”).


¶ 32.        
With respect to the third factor—the internal consistency of the State’s
evidence or totality of the circumstances—we are faced with the problem of
confirmation bias.  Having formed an idea, people, including judges, are notoriously
prone to pick and choose among the evidence which supports their initial view.[3] 
This tendency is particularly marked in the application of multi-factorial
“balancing tests.”  For this reason, the U.S. Supreme Court was critical
of the use of the “reasonably reliable” test for the admission of hearsay in
the context of the Confrontation Clause: 


By replacing categorical constitutional
guarantees with open-ended balancing tests, we do violence to [the constitutional]
design. Vague standards are manipulable, and, while that might be a small
concern in run-of-the-mill assault prosecutions like this one, the Framers had
an eye toward politically charged cases like [Sir Walter] Raleigh’s—great state
trials where the impartiality of even those at the highest levels of the
judiciary might not be so clear.


Crawford v.
Washington, 541 U.S. 36, 67-68 (2004).  


¶ 33.        
An evidentiary test phrased as “the totality of the circumstances”
positively invites selective consideration of the facts needed to support
admissibility.  This case is a good example.  Photographs of the
injuries demonstrate that the complainant suffered a cut lip, but they tell us
little about how it happened.  They are consistent with injury inflicted
by defendant as well as with other explanations.  Similarly, defendant’s
presence in the apartment is consistent with an assault, but it does not prove
it.  The judge’s search for circumstantial evidence of reliability can
become little more than a search for confirmation of an unexpressed decision to
admit the statement.  We will find ourselves looking through the wrong end
of the telescope—reducing our field of view and focusing only on the assumed
conclusion of guilt—if the bare fact of injury lays a foundation for the
admission of an out-of-court statement.


¶ 34.        
We also find support for the Lander position in the structure of
the evidence rules themselves.  There are three principal exceptions to
the general prohibition against hearsay for prior statements that are
admissible without regard to the state of mind of the declarant.[4]
 In addition to the past recollection exception, prior statements by the
witness and former testimony are admitted on the proper foundation.  See
V.R.E. 801(d)(1), 804(b)(1).  The two latter exceptions are limited by
conditions which afford an opportunity for cross-examination.  See, e.g.,
V.R.E. 801(d)(1) (permitting prior statement by declarant to be admitted if “declarant
testifies at the trial or hearing and is subject to cross-examination
concerning the statement”).  Similarly, the rule allowing the use of prior
inconsistent statements for impeachment contains strict limits against the
admission of the statement itself.  See V.R.E. 613(b) (stating that
extrinsic evidence of prior inconsistent statement is generally not
admissible).   


¶ 35.        
In contrast, the admissibility of past recollection recorded is
remarkable in its potential breadth.  Any statement in any form is subject
to the exception.  The only real limits are the absence of a current
memory and a positive statement from the declarant that the events were fresh
in her mind and reliably recounted in her prior statement.  The
opportunity to test this testimony through cross-examination may be limited,
but it is present when the declarant provides the foundational testimony for
her statement.  If testimony from the declarant is replaced by resort to
other evidence in the case consistent with guilt or to general platitudes that
she is in the habit of telling the truth, the past statement may come in
without being challenged in any meaningful way.  As Justice Dooley pointed
out in his dissent in Marcy, this approach would effectively transform
Rule 803(5) into a “catch-all exception” for hearsay.  Marcy, 165
Vt. at 106, 680 A.2d at 86.


¶ 36.        
We recognize that the rule as we now define it presents obstacles to
cases in which victims are prone to recant or are fearful of retaliation. 
These are very real problems in the criminal justice system.  They are not
solved, however, by expanding the exception for past recollection recorded to
allow the admission of virtually any statement by a person who testifies that
she is normally truthful and has no current memory of the events
described.  


¶ 37.        
As the proponent of the evidence at issue, the State had the burden of
proving its admissibility.  State v. Goodnow, 162 Vt. 527, 529, 649
A.2d 752, 754 (1994).  The State failed to meet its burden in this
case.  The complainant’s prior statement should have been excluded because
the complainant failed to testify to its reliability at trial.  


¶ 38.        
We can affirm a conviction despite an erroneous evidentiary ruling if
the error was harmless beyond a reasonable doubt.  See State v.
Oscarson, 2004 VT 4, ¶ 29, 176 Vt. 176, 845 A.2d 337.  In this
case, however, the error was not harmless.  The other evidence against
defendant was not strong, and the erroneously admitted statement was central to
the State’s case.  See State v. Johnson, 2008 VT 135, ¶ 23,
185 Vt. 575, 967 A.2d 1174 (mem.) (reversing conviction where trial court
erroneously admitted statements by defendant and error was not harmless).
 The only evidence that it was defendant who assaulted the complainant was
her prior written statement and the 911 call.  Since we rule today that
the prior statement should have been excluded from evidence, we remand the case
for a new trial.  We do not address defendant’s argument concerning the
improper closing argument since the evidentiary issue alone requires reversal
and that issue is unlikely to reoccur if the case is tried again.[5] 



Reversed and
remanded for further proceedings consistent with this decision.


 



 
  

 

 
 
  

 

 
 
 FOR THE COURT:

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
 Associate
 Justice

 

  


 


¶ 39.        
TOMASI, Supr. J., Specially Assigned, concurring.   I
agree with the majority that we should reject the totality-of-the-circumstances
test set out in the plurality opinion in State v. Marcy, 165 Vt. 89, 680
A.2d 76 (1996).  I do so, however, based on an alternate rationale and
come to a different result concerning the admission of recorded recollections
based on claims of “general honesty.”  Because I conclude that the trial
court’s use of the incorrect standard requires reversal, I concur in the
court’s judgment reversing and remanding for a new trial.[6]   


I.  Vermont Rule
of Evidence 803(5)


¶ 40.        
My review of the Reporter’s Notes to V.R.E. 803(5), Vermont’s common
law, and the views of commentators, leads me to conclude that the drafters of
Rule 803(5) did not intend to allow admission of prior recorded recollections
based on an assessment of the totality of the circumstances.  Decisions
from elsewhere endorsing that test have done so without consideration of the
specific history of the Vermont Rule.


¶ 41.        
United States v. Porter, 986 F.2d 1014, 1017 (6th Cir. 1993), and
its progeny have relied primarily on two textual bases for adopting the
totality-of-the-circumstances standard.  First, those cases note that Rule
803(5) itself does not specify any particular method for determining the
accuracy of the prior statement.  See, e.g., State v. Nava, 311
P.3d 83, 93 (Wash. Ct. App. 2013).  In that regard, the federal and
Vermont rules contain similar general provisions, requiring that the statement
“accurately reflect[] the witness’s knowledge,” F.R.E. 803(5)(C), and that the
statement be “shown . . . to reflect [the witness’s]
knowledge correctly,” V.R.E. 803(5).  Second, the cases point to the notes
of the Federal Advisory Committee.  See, e.g., Nava, 311 P.3d at
93-94.  Those comments provide the following guidance on this issue: 
Rule 803(5) makes no attempt “to spell out the method of establishing the
initial knowledge or the contemporaneity and accuracy of the record, leaving
them to be dealt with as the circumstances of the particular case might
indicate.”  F.R.E. 803 advisory committee’s notes.  Armed with the
text of the Rule and that comment, a number of courts have felt comfortable
adopting a test of accuracy that allows the trial court to examine all relevant
evidence to determine the likely veracity of a recorded recollection.


¶ 42.        
While the language of Vermont Rule 803(5) is nearly the same as Federal
Rule 803(5),[7]
the advisory notes accompanying the two rules differ.  See State v.
Oscarson, 2004 VT 4, ¶ 19, 176 Vt. 176, 845 A.2d 337 (relying on
Reporter’s Notes to interpret hearsay exception); see also Tome v. United
States, 513 U.S. 150, 160 (1995) (plurality opinion) (explaining that
advisory committee’s notes are “a useful guide in ascertaining the meaning of
the Rules”).  Importantly, the Reporter’s Notes accompanying Vermont Rule
803(5) do not reference or cite to the Federal Advisory Committee’s guidance
concerning proving the accuracy of the recorded recollection.  Instead,
the Reporter’s Notes explain that the Rule is “consistent with Vermont law,”
and cite four principal Vermont cases to support that conclusion. 


¶ 43.        
An examination of those decisions reveals that, historically, Vermont
required some type of in-court confirmation from the author of a recorded
recollection that the record was correct.  In Downer v. Rowell, 24
Vt. 343 (1852), and Mattocks v. Lyman, 16 Vt. 113 (1844), the witnesses
had sufficient general memory to testify affirmatively that the prior writing
was correct when made.  In Davis v. Field, 56 Vt. 426 (1884), the
Court expanded the type of vouching that could establish the correctness of the
recorded recollection:


It is enough prima
facie if he swears to his signature, and that it would not have been
affixed but for the purpose of attestation.  


 


   The old
notion that the witness must be able to swear from memory is pretty much
exploded.  All that is required, is, that he be able to swear that the
memorandum is correct.


 


Id. at 428 (citations
omitted); see Alvord v. Collin, 37 Mass. (20 Pick.) 418, 430-31 (1838)
(accepting evidence where witness was able to identify a prior certification
signed by him and testify that, based on the prior signing, the certification
was accurate) (cited with approval in Davis).[8]  


¶ 44.        
Any doubt as to whether Vermont intended Rule 803(5) to be a relaxation
of the common-law standard is answered by State v. Paquette, 146 Vt. 1,
497 A.2d 358 (1985).  There, the Court reviewed a case where the trial
occurred prior to the adoption of Vermont Rule 803(5), but the appeal occurred
after the Rule had taken effect.  The Court concluded that the change did
not impact the analysis of the recorded-recollection issue.  The Court
determined that Rule 803(5) “is a codification of the common law rule” and that
“the common law rule is co-extensive with the rule as codified in V.R.E.
803(5).”  Id. at 3 n.2, 497 A.2d at 360 n.2.


¶ 45.        
Vermont’s approach of requiring the proponent of a prior statement to
vouch for its accuracy was consistent with the common law in general.  As
set out in Wigmore:


The witness must be
able now to assert that the record accurately represented his knowledge
and recollection at the time. . . . 


 


  . . . .


 


  . . . If the
witness can say, “I distinctly remember that when I made or saw this
memorandum, about the time of the events, I was then conscious of its
correctness,” his verification is satisfactory.  


 


  []But if he
relies, not on a present recollection of his past state of mind, but on other
indications, such as a habit, a course of business, a check-mark on the margin,
or merely the genuineness of his handwriting, then the certainty is of a lower
quality, though still satisfactory for most practical purposes.  In
general, it is conceded that when the witness’ certainty rests on his usual habit
or course of business in making memoranda or records, it is sufficient.


 


3 J. Wigmore, Evidence § 747, at
97-98 (1970) (footnotes omitted); see also D. Binder, Hearsay Handbook § 15:5
(4th ed. 2013) (“An important prerequisite to admission of recorded
recollection is that the witness vouch for its accuracy. . . .
 At least this was the general rule prior to the enactment of the Federal
Rules of Evidence.”).


¶ 46.        
As a result, even if the witness had no present recollection of
recording the event, his or her testimony before the factfinder that the
recorded recollection was truthful provided sufficient justification for
admission of the statement.  While the opportunity for cross-examination
may not have been extensive in light of the failed memory, the witness was
still subject to some questioning.  She may have been examined about
inconsistencies within the recorded recollection or between the recorded
recollection and other evidence.  She could have been examined as to any
bias and as to any other area potentially relevant to her credibility. 
Compare J. Bellin, Circumventing Congress: How the Federal Courts Opened the
Door to Impeaching Criminal Defendants With Prior Convictions, 42 U.C.
Davis L. Rev. 289, 296-97 (2008) (explaining how early common law’s preclusion
of testimony from witnesses who had been convicted of felonies and “infamous
crimes” evolved into a standard allowing impeachment based on such
convictions), with V.R.E. 609 (allowing impeachment by certain past criminal
convictions), and United States v. Penny, 60 F.3d 1257, 1264 (7th
Cir. 1995) (stating common law and F.R.E. 608 permit impeachment based on
witness’s character for truthfulness).  Whatever the scope of the
testimony, it would have been under oath and the jury or judge would have been
able to evaluate the witness’s demeanor, sincerity, and believability.


¶ 47.        
Accordingly, I agree with the majority that there needs to be some
direct affirmation from the witness that the recorded recollection is truthful
and accurate.[9] 
I also agree that testimony that the witness is “generally honest” is
insufficient—standing alone—to admit the prior recollection.  Where I
respectively depart from the majority is the narrow instances where the witness
can apply his character or trait to the circumstances of the recorded
recollection and proceed to testify as to his belief that the statement itself
is truthful and accurate.  If he is able to testify to that, it meets the
requirement that the witness “adopt his prior statement as his own or aver that
the statement accurately reflected his knowledge at the time of its
making.”  State v. Lander, 155 Vt. 645, 645, 582 A.2d 128, 128
(1990) (mem.).   


¶ 48.        
In my mind, the key to admissibility under Rule 803(5) is the witness’s
confidence and verification under oath—whether based on memory, habit, trait,
practice, marking, or firm conviction—that, under the circumstances in which
the statement was made, she would have been truthful in making it.  Where
there is a significant loss of memory, the witness simply cannot testify as to
the actual facts underlying an event.  Pursuant to Rule 803(5), she
relies, instead, on a contemporaneous record concerning the event that she is
confident is accurate.  The witness adopts that recorded recollection, it
is read to the factfinder, and it substitutes for her memory as to that part of
her testimony.  Polite v. State, 116 So. 3d 270, 279 (Fla. 2013)
(per curiam).  The factfinder may then evaluate it along with the other
testimony from that witness, giving it the weight the factfinder chooses. 
It is the witness’s endorsement of the prior statement under oath and the
opportunity for the judge or jury to evaluate her credibility that satisfies
the accuracy component of the Rule 803(5) analysis.  See id. 
“[T]he reliability of the assertions [sought to be admitted under Rule 803(5)]
rests upon the veracity of a witness who is present and testifying.”  2 K.
Brown, McCormick on Evidence § 279, at 294 (6th ed. 2006). 


¶ 49.        
As noted above, such an approach is consistent with prior Vermont and
related law as endorsed in the Reporter’s Notes to Rule 803(5).  See Davis,
56 Vt. at 427-29 (admitting statement where witness testified based on practice
that he would not have affixed signature unless document were truthful); Alvord,
37 Mass. (20 Pick.) at 430-31 (similar).[10]


¶ 50.        
It is also in keeping with the views of a number of commentators. 
Wigmore provides:


Is it enough that
the witness (as is usual with attesting witnesses to a document)
merely recognizes his handwriting and knows that he would not have written or
signed without believing the record to be correct?  Here the witness is
really calling to his aid, not his specific business custom, but his general
moral attitude; but, as a rule, the indication should be and is treated as
sufficient.


 


3 Wigmore, supra, § 747, at
99.  The Federal Practice and Procedure treatise is similar:


The witness may
testify either that he remembers making an accurate recording of the event in
question which he now no longer sufficiently remembers, that he routinely makes
accurate records of this kind, or, if the witness has entirely forgotten the
exact situation in which the recording was made, that he is confident from the
circumstances that he would not have written or adopted such description of the
facts unless that description truly described his observations at the time.


 


30C K. Graham, et al., Federal
Practice and Procedure § 7046 (2014) (emphasis added).  As is
Weinstein:


[T]he foundation
for their own record must include testimony either that the witness recalls
having made an accurate record or that, even though the witness does not now
recall his or her state of mind when making or adopting the record, the witness
would not have made or adopted it without knowing it was correct.  


 


5 J. Weinstein & M. Berger,
Weinstein’s Federal Evidence § 803.07[3][c], at 803-53 to 803-54 (2d ed. 2013)
(emphasis added). 


¶ 51.        
Case law generally supports that approach as well.  Polite v.
State, relied upon by the majority, would admit statements under Rule
803(5) if: “(1) although the witness does not recall the statement, the witness
has a habit of recording such matters correctly or (2) the witness
believes the statement is correct because the witness would have been truthful
in providing the statement.”  116 So. 3d at 279 (emphasis added);
accord United States v. Smith, 197 F.3d 225, 230-31 (6th Cir. 1999)
(concluding trial court properly admitted statement where witness testified she
“would not have lied” in making statement to the police); State v. Gorman,
2004 ME 90, ¶¶ 36-40, 854 A.2d 1164 (affirming trial court’s decision to admit
statement of witness with post-traumatic stress disorder and declining health
who could not recall testifying before grand jury where witness was able to
testify that she would have been truthful to the grand jury); see also Key
v. State, 890 So. 2d 1043, 1052 (Ala. Crim. App. 2002) (concluding there
was no error in admitting grand jury testimony of witness whose memory was lost
due to medication where witness testified that she “would have told the grand
jury the truth”), aff’d in part and rev’d in part on other grounds by Ex
Parte Key, 890 So. 2d 1056 (Ala. 2003).   


¶ 52.        
At base, admission of recorded recollections under Rule 803(5) relies on
dual claims of honesty of the testifying witness.  The witness who
testifies that she remembers making a prior statement and intending to be
truthful at that time, relies on her honesty on the stand and at the time she
made the statement.  A business owner who claims her habit or practice was
to make specific entries only upon reviewing inventory stores, relies on her
honesty at trial and when the entry was made.  I fail to see a difference
in kind between those situations—which the majority endorses—and the
circumstance where a person is able to swear at trial that, based on her
character and beliefs, she would have been truthful in giving a prior statement
to the police, to a grand jury, or at a deposition.


¶ 53.        
Unfortunately, people lose their memories for many reasons.  They
may suffer from amnesia, have Alzheimer’s disease, take powerful and
debilitating medications, or incur a traumatic brain injury.  If they are
still able to testify in open court as to their honest belief that a statement
they previously made was truthful, I believe that should be sufficient to
sustain its admission under Rule 803(5).  As the court stated in Walker
v. Larson:  “to exclude such a record when honestly made would be to
reject the best and frequently the only means of arriving at the truth.” 
169 N.W.2d 737, 741 (Minn. 1969).[11]



¶ 54.        
I reach that conclusion cognizant that the endorsement provided by the
witness is not the only indicator of the prior statement’s accuracy.  Both
the Federal Advisory Committee Notes and the Vermont Reporter’s Notes to Rules
803(5) provide that a recorded recollection’s contemporaneousness guarantees
its accuracy.  See F.R.E. 803 advisory committee’s notes (“The guarantee
of trustworthiness is found in the reliability inherent in a record made while
events were still fresh in mind and accurately reflecting them.”); Reporter’s
Notes, V.R.E. 803 (“Contemporaneousness is the guarantee of [a recorded
recollection’s] trustworthiness.”).  Given that additional assurance of
reliability, a witness’s statement that she would not have signed or made a
statement unless it was truthful, or a similar affirmation, should be enough to
allow admission of the statement.[12] 
It would then be up to the finder of fact to assess the weight to give the
recorded recollection in light of all of the circumstances and other evidence
in the case.


II.  Harmless Error


¶ 55.        
The trial court noted that admitting complainant’s statement was a “close”
call, even under Marcy’s totality-of-the-circumstances analysis. 
The question of admissibility under the test I would adopt is even
closer.  On the one hand, complainant did not merely state that she is an
honest person; she actually tied her claim of honesty directly to the statement
at issue in the case.  From a review of the transcript, it is apparent
that she was either holding a copy of the statement or had it with her on the
witness stand.  She first identified as her own the signature that accompanied
the notarized statement.  The following colloquy ensued:


[Q]  Would you sign something
that you had written that you didn’t believe was true?


 


  A.  No.


 


  Q.  Would you lie to the
police?


 


  A.  No.


 


  THE COURT:  I’m sorry,
what was your answer to that?


 


  THE WITNESS:  I wouldn’t
lie to the police.


 


On cross-examination, she
re-affirmed that she would never lie to the police.  


¶ 56.        
On the other hand, the witness also testified that her ability to
accurately record what happened on the day in question was severely
impaired.  The witness candidly admitted that she was not only inebriated,
but polluted with alcohol.  On the day complainant wrote the statement,
she claimed to have consumed a gallon of whiskey and two thirty packs of
Budweiser.  By her own admission, she had been drinking all day in the hot
sun, was “extremely drunk,” “trashed,” and “a train wreck.”  She was also
on medication.  Based on those considerations, she conceded that the
statement might not have been completely accurate.  


¶ 57.        
As noted above, the trial court employed an improper standard in
assessing the admissibility of the complainant’s prior recorded
statement.  In light of the circumstances outlined in the preceding
paragraph, I cannot with confidence say beyond a reasonable doubt that the
court would have admitted the statement had it employed the standard I propose
today.  The complainant vouched for her truthfulness in making the
statement but also gave cause for serious doubt as to the statement’s
accuracy.  Cf. United States v. Edwards, 539 F.2d 689, 692
(9th Cir. 1976) (finding witness’s intoxication at time of making prior
statement went to weight of evidence, as opposed to its admissibility, where
witness testified at trial that he believed the statement was accurate). 


¶ 58.        
Because I cannot conclude as a matter of law in this case that the
statement was admissible under the correct standard, the error in applying the
improper standard was not harmless.  See State v. Carter, 164 Vt.
545, 553, 674 A.2d 1258, 1264 (1996) (explaining that error is harmless only if
appellate court “can state a belief that it was harmless beyond a reasonable
doubt” (quotation omitted)); State v. Barber, 157 Vt. 228, 232, 596 A.2d
337, 339 (1990) (remanding for a new trial where, although trial court could
have found breach of peace, it did not reach issue and evidence was not so
overwhelming as to show breach of peace as a matter of law).  As a result,
I would remand for a new trial and leave the admissibility of the statement
under the new standard for consideration in the first instance by the trial
judge.  



 
  

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
 Superior Judge, Specially
 Assigned

 

  














[1] 
The Robar holding that the State cannot meet its burden of proof based
solely on a hearsay statement unless there are indicia of reliability is
limited to those hearsay statements admitted as prior inconsistent statements
or as past recollections recorded, and does not extend to evidence admitted
under other hearsay exceptions.  157 Vt. at 395, 601 A.2d at 1380. 
Although in State v. West, 164 Vt. 192, 667 A.2d 540 (1995), the
defendant claimed that an excited utterance had to have separate indicia of
reliability, this Court distinguished the excited utterance from the past
recollection recorded in Robar and did not extend the Robar rule
to excited utterances.  Id. at 196-98, 667 A.2d at 543-44.  







[2] 
Vermont Rule of Evidence 803(5) provides: 


  The following are not excluded by
the hearsay rule, even though the declarant is available as a witness:  


  . . . .


  (5)  A memorandum or record
concerning a matter about which a witness once had knowledge but now has
insufficient recollection to enable him to testify fully and accurately, shown
to have been made or adopted by the witness when the matter was fresh in his
memory and to reflect that knowledge correctly.  If admitted, the
memorandum or record may be read into evidence but may not itself be received
as an exhibit unless offered by an adverse party.







[3]
 See, e.g., Francis Bacon, Advancement of Learning and Novum Organum
320-21 (J.E. Creighton ed., Colonial Press 1900) (1620) (“The human
understanding, when any proposition has been once laid
down . . . forces everything else to add fresh support and
confirmation; and although most cogent and abundant instances may exist to the
contrary, yet either does not observe or despises them, or gets rid of and
rejects them by some distinction, with violent and injurious prejudice, rather
than sacrifice the authority of its first conclusion.”).   







[4] 
The majority of hearsay exceptions or non-hearsay statements such as
admissions, excited utterances, or present sense impression are deemed to be
reliable due to the internal mental experience of the declarant.  V.R.E.
801(d)(2), 803(1), (2).  Others come in as matters of business or official
routine.  See, e.g., id. 803(6) (allowing admission of business
records).   







[5]
 In the course of closing, the prosecutor stated the following: 


 


Finally, you have
[complainant’s] testimony.  Think about, if you can, how you would feel if
you were asked to come into a courtroom and talk about something like this in
front of twelve strangers.  Think about how you would feel if you were in
that position.  You were able to hear what she was able to remember today
on the stand.  Think about if something like this had occurred to you—had
happened to you, if you were in this person’s shoes, would you want to remember
every detail?  Is this the type of thing that you would go over in your
mind, you would commit to memory?  Or would you just want it to be in the
past? 


 


We note that the prosecutor’s
exhortation to the jury to place themselves in the shoes of the complainant was
improper.  It was not the subject of an objection by defendant.  We
do not consider whether it met the criteria for reversal on plain-error
grounds. 


 







[6] 
I also join the majority’s determinations with regard to defendant’s
sufficiency-of-the-evidence argument and the prosecution’s repeated and
inappropriate invocation of “golden rule” comments in its closing and rebuttal
arguments.







[7] 
Federal Rule of Evidence 803(5) was amended in 2011 for stylistic
purposes.  See F.R.E. 803, cmt. 2011 amend.  These stylistic
amendments have not been incorporated in Vermont Rule 803(5).







[8] 
The fourth decision referred to in the Reporter’s Notes, Pinney v. Andrus,
41 Vt. 631, 648 (1869), does not provide great detail as to the precise
foundation laid by the witness but suggests that the witness testified that the
document was created based on a prior accurate memory that the witness wished
to preserve.







[9] 
That conclusion is in tension with the Court’s ruling in Paquette. 
146 Vt. at 4, 497 A.2d at 360-61.  The Paquette Court affirmed the
admission of a recorded recollection based only on the witness’s testimony that
she had signed the statement around the time of the underlying event.  Id. 
Absent some further testimonial confirmation as to the veracity of the
statement, I do not believe a proper foundation supported the admission of the
statement.







[10] 
The majority suggests that the fact that a writing is signed under oath is
insufficient to meet the admissibility demands of Rule 803(5).  Ante,
¶ 31.  I believe the citation supporting that proposition was concerned
with the idea that a document that has been signed under oath should not be
able to establish its own admissibility without testimony from its
author.  See 2 Brown, supra, § 283, at 299 (explaining that witness
must acknowledge accuracy of statement at trial and an assertion of accuracy on
the statement is not sufficient).  Consistent with Davis, if
the witness examines the jurat and can testify that she would not have signed a
statement under oath unless she was confident that it was accurate, it should
be admissible.  56 Vt. at 428.







[11] 
Given the multi-part test of admissibility under Rule 803(5) and the fact that
it is only applicable in cases where a witness’s memory is unable to be
refreshed by the prior statement, see V.R.E. 612, I do not share the majority’s
concern that extending Rule 803(5) to such situations would amount to a
catch-all exception to the hearsay rule.  The exception here is limited
and well cabined.


 







[12] 
Of course, each witness’s endorsement would need to be examined
carefully.  Some witnesses may testify with confidence as to the veracity
of the recorded recollection.  Others may testify with less fervor as to
the truthfulness or accuracy of the prior statement.  See Marcy,
165 Vt. at 99-100 (Allen, C.J., concurring).  It is up to the trial judge
to evaluate the vouching and determine whether it establishes sufficient
reliability to admit the prior statement.